W. W. CORE *et ux. v.* ISHAM RESHA.

*(Nashville.* December Term, 1917.)

1. **MASTER AND SERVANT.** The relation. Liability for chauffeur's negligence.

Regarding liability for injury by automobile of person on sidewalk through negligent driving, *held,* machine was in possession of chauffeur as servant of board of commissioners of county asylum, and not of owner, wife of asylum superintendent; the county having contracted for its use for commissioners on occasions of their visits to institution, agreeing to pay for its upkeep and wages of chauffeur, and it being, at time, on way for them, on their order. (*Post, pp.* 410-413.)

Acts cited and construed: Acts 1905, ch. 173.

Cases cited and approved: Leach v. Asman, 130 Tenn., 510; Parker-Harris Co. v. Tate, 135 Tenn., 509; Coca-Cola Bottling Works v. Brown, 139 Tenn., 640; Symington v. Sipes, 121 Md., 313; Reilley v. Connable, 214 N. Y., 586.

Case cited and distinguished: Goodman v. Wilson, 129 Tenn., 464.

Code cited and construed: Sec. 3079a195 (S.).

2. **MASTER AND SERVANT.** Liability for chauffeur's negligence. Lien statute.

Laws 1905, chapter 173, section 5, giving lien on automobile for recovery for injuries from running thereof in willful violation of statute, by whomever it was driven, does not change common-law rule that owner is not personally liable for permissive use, not in his business. (*Post, pp.* 413-417.)

Cases cited and approved: Mattei v. Gillies, 16 Ont. L., 558; Hartley v. Miller, 165 Mich., 115; Louisville Lozier Co. v. Sallee, 167 Ky., 499.

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court— HON. THOS. E. MATTHEWS, Judge.

STOKES & STOKES, for appellant.

G. S. MOORE, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is a suit by Isham Resha, a minor, to recover damages for personal injuries resulting from a collision of an autombile, alleged to be the property of Mrs. Core, with him, while he was standing on a sidewalk in front of the store of his father at the corner of Seventeenth avenue and Underwood street in the city of Nashville. The trial resulted in a verdict for the injured plaintiff, after a motion for a directed verdict in favor of the defendants below had been overruled.

On appeal the court of civil appeals held that the motion for peremptory instructions interposed by the defendants below should have been sustained, and the case is before us on petition for and grant of *certiorari.*

There is ample proof that the chauffeur who drove the car was driving at an unlawful and reckless rate of speed when it approached the corner above referred to, where it skidded, ran upon the pavement, and struck the child.

The crucial question is: Who was the employer of the chauffeur at the time of the injury? Dr. W. W. Core was the superintendent of the Davidson County Asylum, and the automobile in question had been purchased by him and given to his wife, and it was duly registered in her name. The county asylum is located on a pike about six miles from the city of Nashville. A branch of that insitution is located about four miles from the main buildings. The entire institution is managed and controlled by a board of commissioners, who hold their meetings at the asylum.

The county provided no vehicle or mode of conveyance by means of which the commissioners might visit the asylum or its branch. Neither group of buildings is on a car line. The board of commissioners made a contract for the use of the automobile for that purpose on occasions of visits to the institution by its members; the county agreeing to pay for the upkeep of the machine and pay the wages of the chauffeur, in consideration of which its board of commissioners were to have the exclusive use of the automobile when called for by them. In order to call the machine into such use, it was necessary for the commissioners to notify and obtain the permission of Core or his wife.

On the day of the accident a meeting of the board was to be held at the asylum, and the chairman tele-phoned to the main building and ordered the car sent into the city for such use. An employee of the institution called the chauffeur and ordered him out on the trip in question.

The chauffeur served the Cores as dining room boy and as driver of the car, which was under their direction and control when it was not engaged in the service of the county's asylum commissioners. After the accident he left the State, and at the time of the trial could not be found.

The court of civil appeals was of opinion, and ruled, that at the time of the accident the car was, in legal contemplation, in the possession of the chauffeur as the servant of the board of commissioners, and not of the Cores; and we hold with that view.

In *Goodman* v. *Wilson,* 129 Tenn., 464, 166, S. W., 752, 51 L. R. A. (N. S.), 1116, it was stated that the weight of authority as to the rule at common law is that an automobile is not a dangerous instrumentality; but a decision as to what was the effect of the Automobile Act (Acts 1905, chapter 173; Shannon's Annotated Code, section 3079a195, et seq.) upon the common-law rule was waived, as being unnecessary to a disposition of the case. However, in later cases (*Leach* v. *Asman,* 130 Tenn., 510, 172 S. W., 303, and *Parker-Harris Co.* v. *Tate,* 135 Tenn., 509, 188 S. W., 54, L. R. A., 1916F, 935, in the last of which the act was

under review) it was held that since the passage of
said act an automobile is not to be deemed to be
included with instrumentalities that are inherently
dangerous, and this doctrine was reaffirmed at this
term in the case of *Coca-Cola Bottling Works* v.
*Brown,* 139 Tenn., 640, 202 S. W., 926.

In *Goodman* v. *Wilson,* supra, the basis of the com-
mon-law liability of an employer for negligence of his
chauffeur was clearly defined. That liability, it was
held, is to be tested by the rules governing master
and servant. It was there said:

"It is undoubtedly true, as a general proposition
of law, that the doctrine of *respondeat superior* ap-
plies only when the relation of master and servant is
shown to exist between the wrongdoer and the person
sought to be charged with the injury resulting from
the wrong at the time and in respect of the very
transaction out of which the injury arose, and the
mere fact that the driver of the automobile was the
defendant's servant will not make the defendant
liable. It must be further shown that at the time of
the accident the driver was on the master's business,
and acting within the scope of his employment."

This is in line with the overwhelming weight of
authority in this country, which is to the effect that,
if a chauffeur uses a car wholly in a service not the
owner's, either with or without the owner's per-
mission, the latter is not liable to one injured by
reason of a negligent operation of the car, for the
reason that he is not, in such use, acting within the

scope of employment in the owner's business. These authorities are collected in the following cases and notes: *Symington* v. *Sipes,* 121 Md., 313, 88 Atl., 134, 47 L. R. A. (N. S.), 662, and note; *Reilley* v. *Connable,* 214 N. Y., 586, 108 N. E., 853, L. R. A., 1916A, 954, note, Ann. Cas., 1916A, 656; Ann. Cas., 1917D 1001, and notes, in addition to those cited in *Goodman* v. *Wilson,* supra.

Is the rule changed by reason of the provisions of our Automobile Act, above referred to, touching permissive use of an automobile? The court of civil appeals, it fairly appeals from its opinion, held that it is not, and we think correctly.

The act, after regulating the rate of speed of automobiles outside city limits, provides:

"Whenever any suit for damages is brought in any court of competent jurisdiction for injuries to persons, or property caused by the running of any automobile in willful violation of the provisions of this act, there shall be a lien upon such automobile for the satisfaction of such recovery as the court may award whether, at the time of injury, such automobile was driven by the owner thereof or by his chauffeur, agent, employee, servant or any other person using the same by loan, hire, or otherwise." Section 5.

The act deals, not with the liability of the owner in an action *in personam* for damages, or with him from the standpoint of employer, but with the subjection of of property of the owner—the automobile—to a lien when he is found to have permitted its use. In order

to a subjection of the machine to the lien, the test is not whether the chauffeur was at the time acting in the line of the duty owed by him to his employer. The test by which that right is determined is not the "scope of employment" of the driver, but the scope of the authority or permission given by or imputable to the owner, and there may be a lien enforcement, though the machine is not used in furtherance of the owner's business. *Parker-Harris Co.* v. *Tate,* supra. The basic rule of *respondeat superior,* which measures one's liability as employer for the acts of his employee, does not apply.

On the other hand, that rule of common-law liability of an employer, after the passage of the act as well as before, governs when the action is against the owner as employer or *in personam;* that is, where a judgment is sought fixing upon the defendant, derivatively, personal responsibility for a wrongful act of another as his employee. Such a liability or judgment is, of course, not one that is confined to the value of the machine. That the two liabilities are by the statute left as distinct things may be brought into clearer outline by a consideration of two other differentiating factors: (a) Willful negligence of the driver is requisite to the lien liability; mere negligence of an employee acting in the line of his duty suffices to fix the derivative liability. (b) The statute subjects to lien liability the car of a garage owner where it is used by a customer, although the doctrine of *respondeat superior* is in no sense applicable. By no principle of

law may such an owner be made to respond for damages in excess of the value of the car. However, if the one driving the car be his employee, there might be added, to the liability of the car of the owner to respond under the provision of the statute, a liability of the same person as employer to answer for the full damage sum under the common-law principle of *respondeat superior*.

The pending suit is one to fix liability on defendant as employer and *in personam*. There is no attempt to attach the car, or to enforce a lien against it for damages done within the limits of its value, as against defendant Mrs. Core as mere owner. As we have seen, in such case liability must be based upon common-law principles, which are illustrated and enforced in *Goodman* v. *Wilson* and the long line of cases referred to above. The true test then is, as above said, not permissive use, but use in the employer's business.

We think the court of civil appeals was not in error in its conception that the statutory measure of liability does not overlap and in some unexplained way interlace with the common-law measure, so as to work a change in the latter. We find but one decision of a court of last resort which tends to support that view. *Mattei* v. *Gillies,* 16 Ont. L., 558, 12 Ann. Cas., 970.

It is contended, however, that even within the limitations of this common-law test of liability the owner of the automobile is liable.

Counsel of the injured minor argues that, as the chauffeur was in the service of the Cores most of the time, the direction to him to take the car into the city for members of the board of commissions was referable to them to such an extent that the chauffeur must be deemed to have been acting under defendant's direction and in their service in making the trip into the city. As basis for the contention, counsel rely upon *Goodman* v. *Wilson,* in its ruling that there was liability on the part of both of two joint owners of the car there involved, on the ground that the chauffeur and the car at the time of the accident were on the business of the joint owners of the automobile, whether they were both using the automobile at the time or not; the driver being engaged in doing the thing for which the automobile was owned and operated.

The decision in *Goodman* v. *Wilson* was expressly put on the ground of the ownership and use being joint; the owners being *quasi*-partners as to control of the car. That the court did not intend its ruling to have application to a case like the one under investigation, where the uses and controls are shown to be separate as to periods of time and purposes, is clearly to be seen from this language in the opinion:

"There is no separateness of time at which the driver may serve, or of interest in the automobile, so that it could be said that the machine belonged exclusively to one, or the driver was exclusively in his service. The case might be different if the understanding between Mrs. Richardson and Mr. Goodman

had been that at certain hours of the day one should have exclusive use of the machine and the driver.''

The case thus hypothetically put is the one raised by the facts of the pending suit. We deal, not with co-ownership, but with a species of letting of a car by the owner to a third person for use during separate hours in the latter's business. There was no hiring of the chauffeur along with the car. The control and use of the car when the asylum was left for the trip into the city cannot be attributed to Mrs. Core, to make a principal's relation on her part to the driver. The mission or business was not hers, nor was the employment or control of the chauffeur. *Hartley* v. *Miller*, 165 Mich., 115, 130 N. W., 336, 33 L. R. A. (N. S.), 81, and note; *Louisville Lozier Co.* v. *Sallee*, 167 Ky., 499, 180 S. W., 841.

The result is the affirmance of the judgment of the court of civil appeals.