BASKIN & COLE, et al., v. J. M. WHITSON, Administrator.

BASKIN & COLE, et al., v. HELEN HENDERSON, By Next Friend.

BASKIN & COLE, et al., v. J. C. HENDERSON.

Middle Section.   July 31, 1928.

No petition for Certiorari was filed.

Bond, Fuqua & Bond and W. K. Cook, of Nashville, for Baskin & Cole, et al.

Roberts, McCarley & Roberts, of Nashville, and True & Dorsey, of Springfield, for Whitson, et al.

CROWNOVER, J.  These three actions for damages grew out of the same automobile accident, and although separate actions, they were, by agreement, tried together on the same testimony. The first action was brought by J. M. Whitson, Administrator for damages for the death of his minor daughter, Pansy Whitson. The second action was brought by Helen Henderson, by her next friend, for damages for personal injuries; and the third action was brought by J. C. Henderson for damages for the loss of services of his minor daughter, Helen Henderson who suffered personal injuries for which she sued in the second action above styled.  In each action the plaintiff sued R. A. Baskin and Joe Cole, a co-partnership, operating a line of public motor vehicles between the City of Nashville and the Powder Plant at Jacksonville, Tennessee, as common carriers of passengers for hire, and the Victory Mutual Indemnity Company of Memphis, which Company held a policy of insurance in the sum of $5,000 on the Big Six Studebaker automobile, insuring passengers against injury and damage on account of the negligence or default of Baskin & Cole and their agents, as required by Chap. 729 of the Private Acts of 1925.

Each declaration contained three counts based on common-law negligence; the first count averred that the automobile was operated at a fast, negligent and dangerous rate of speed; the second count averred that the automobile was negligently driven against an embankment, and that the defendant had failed to keep its steering apparatus in a safe condition, as a result of which negligence the automobile was turned over; and the third count as amended, averred that the automobile was negligently operated, and was driven with a

defective steering apparatus, at a rapid and reckless rate of speed, not under control, over an embankment against a telephone pole, which upset the automobile and caused the injuries, for which these actions were brought.

The substance of the averments of negligence in the declaration, in each case, is that the automobile was being operated with a defective steering apparatus, not under the control of the driver, and was negligently driven at a fast and reckless rate of speed over an embankment and against a telephone pole, which upset the car and resulted in the personal injuries for which these actions were brought.

The defendant Indemnity Company filed, in each case, what it designated a "Plea in abatement," in which it averred that the automobile was not used as a common carrier for hire, and was not in the service of or on the business of the defendant Baskin & Cole at the time of the accident. But the court held that the plea was a special plea in bar.

Afterwards all the defendants filed pleas raising the general issue, but their real defenses were: (1) That the automobile was not being operated at the time as a common carrier for hire in the service or business of the defendants, nor within the scope or apparent scope of the driver's employment; (2) The automobile was being driven without the knowledge, consent or permission of the defendant Baskin and contrary to his instructions; and (3) That the accident was unavoidable in that the steering apparatus became suddenly locked and therefore the accident was occasioned by no negligence of defendants or their servants.

The actions were tried by the court and a jury. At the close of plaintiffs' evidence and at the close of all the evidence the defendants moved for directed verdicts: (1) Because there was no material evidence upon which to base a verdict or to show that defendants were guilty of negligence; (2) Because the automobile was not being operated as a common carrier for hire, and (3) Because it was not in the service of Baskin & Cole at the time of the accident; which motions were overruled by the court, and the jury returned verdicts against all of the defendants in favor of J. M. Whitson, Administrator for $8,000, in favor of Helen Henderson for $500, and in favor of J. C. Henderson for $250. The defendants' motions for a new trial were overruled, but the court ordered remittiturs as against the defendant Indemnity Company to $4751 in favor of Whitson, to $286 in favor of Helen Henderson, and $143 in favor of J. C. Henderson, because the policy was limited to $5000, but he left the verdicts against the other defendants at the same amounts as returned by the jury, and judgments were entered accordingly, to which the defendants excepted, appealed in error

and have assigned fifteen errors, which in substance, chiefly raise the propositions that the court erred in not directing verdicts for the defendants for the reasons set out in the motion for peremptory instructions, and also in not charging the jury in accordance with their defenses as hereinabove set out. The defendants also complained that the verdicts were excessive and that the court erred in ordering remittiturs of the verdicts in favor of the Indemnity Company.

The facts necessary to be stated are that Baskin & Cole and others formed a co-partnership to operate a line of public motor vehicles to haul passengers for hire between Nashville and the Powder Plant at Jacksonville, Tennessee, a distance of seventeen and one-half miles, and were common carriers for hire. Each member furnished his own automobile, paid all of the expense for labor, maintenance and upkeep, and they pooled the gross profits and each received his part in proportion to the number of motor vehicles employed at the time.

R. A. Baskin had two vehicles, one driven by himself, and the other, "a Big Six Studebaker Automobile," driven by his employee, Dave Gill, and they had regular schedule trips at stated hours. For instances, Gill was to leave Nashville at 6 p. m., arrive at Jacksonville at 7 p. m. and return to Nashville shortly before 8 p m. and was to put the automobile into the Central Garage, and then to be off duty until six o'clock the next morning, unless he had passengers, or unless there were extra passengers, more than could be accommodated by the automobiles making the regular runs, then it was his duty to make another trip. In other words, it was incumbent on the drivers to make extra trips as often as was necessary to accommodate the passengers, even though it took three or more automobiles for each trip.

Baskin & Cole had printed cards showing that their busses or automobiles left Nashville and the Powder Plant every hour from early in the morning until ten o'clock at night, but certain drivers were to drive at certain hours, and they had commutation tickets issued in the name of Baskin & Cole, which were delivered to the drivers, who were to sell them to the passengers who desired to make frequent visits, and each driver must account for the tickets delivered to him.

By Chapter 729 of the Private Acts of 1925, it is provided that persons, firms or corporations, operating public motor conveyances for hire in the four large counties of Tennessee, (declared to be common carriers), shall cause to be executed and file with the County Court Clerk a bond or insurance policy of $5000. for each car operated in passenger service, binding the principal and in-

surer to make compensation for injury to persons, whether passengers or not, resulting from the negligent operation of such motor vehicles, by the owners and their agents, and persons injured by such operation shall have a right of action against the owner or operator and the insurer.

In compliance with this act, R. A. Baskin had a policy of $5000 insurance with the Victory Mutual Indemnity Company of Memphis, Tennessee, properly conditioned and delivered to the county court clerk of Davidson county as required by said act, which policy was in force at the time when the accident in question occurred on October 21, 1925.

In the afternoon of October 21, 1925 Dave Gill, the driver of the Big Six Studebaker Automobile owned by Baskin, made an engagement with two young girls, Helen Henderson and Pansy Whitson who resided in Jacksonville and worked at the Rayon Plant there, for him and O. C. (Pete) Rinaldo to accompany them to a show at the Princess Theater in Nashville at eight p. m., with the agreement that the girls should be returned to their dormitory at Jacksonville after the show.

The young ladies with other passengers boarded, at Jacksonville, the automobile driven by Gill at 7 p. m. and arrived in Nashville at about 7:45 p. m. The passengers were discharged at the Bus Station on Fourth Avenue in Nashville, and the automobile, on account of traffic regulations and congestion, was driven down the avenue for a short distance and parked in front of the Williams Printing Company. Gill and the girls then picked up Rinaldo at a pool room and then went to the show at the Princess Theater, where they stayed until within fifteen minutes to 10 p. m., and after seeing the show they went to and entered the automobile, and left the city at about 10 p. m. without going to the Bus Station. Dave Gill drove the automobile and Miss Henderson sat beside him. Miss Whitson and Rinaldo occupied the rear seat. They stopped for ten or twenty minutes at Vaughn's Pig Stand on the road outside of the city and obtained sandwiches and cold drinks, then resumed the journey out the Lebanon Pike toward Jacksonville. When they reached a point near the Soldier's Home, about three miles from Jacksonville, on turning a sharp curve, while running at a rate of twenty-five to thirty miles per hour, the car left the pike, ran over a ditch and mounted an embankment thirty-nine inches high, ran through a wire fence, struck a telephone pole and turned over, severely injuring the young ladies, as a result of which Miss Whitson died within a few hours.

Both the young ladies had the Baskin & Cole Commutation tickets. Dave Gill had given without compensation one of these tickets to

Miss Henderson about ten days or two weeks before the accident, and she had ridden on it once or twice, and the ticket had been punched so that it would not appear that she was riding as "a dead head." The record does not show how Miss Whitson acquired her ticket but Gill testified that he punched both tickets as he came to the city before the show, and that he agreed, when he made the engagement, to return the girls to Jacksonville that night after the show.

The defendants insist, and the driver Gill and other witnesses testified, that in rounding the curve he slowed down and tried to steer the car, but found that the steering gears had suddenly become locked by the tightening of a nut so that the steering wheel could not be operated on turning the curve, and that he pulled the wheel so strongly that is was pulled apart and that he then put on the brakes and tried to stop the car but it ran over the ditch and the embankment, struck the telephone pole and turned over; and that the injuries were inflicted and the accident was caused through no fault of the defendants on their agents, and was unavoidable.

The first two assignments of error are that the court erred in not directing verdicts for the plaintiffs in error, and that there was no material evidence: (a) that the automobile was being operated as a common carrier for hire; (b) that the automobile was being operated in the business or service of defendants or within the scope of the employment, but on the contrary was being operated by the driver while off duty on his own business or pleasure, on a joy ride, which was wholly disconnected with his master's business; (c) that the automobile was being operated with the knowledge, consent or permission of the owner, but on the contrary was being operated by the driver in violation of instructions; and (d) that the accident occurred by any negligence of the driver or owner of the automobile.

The owner of a motor vehicle may be liable for injuries occasioned by its operation by his agent or employee within the scope of his authority or employment. The owner is not an insurer but is liable only for injuries which result from the negligence of the servant and which are proximately caused thereby. See 42 C. J., 1094-1095, sec. 855; Telephone Co. v. Burns, 1 Hig., 148.

But it is necessary that the relation of master and servant or principal and agent exist at the time of the negligent act complained of. See 42 C. J., 1095, sec. 856; Hull v. Simmons, 7 Hig., 351.

> "To impose liability upon the owner for an act of the driver of his motor vehicle under the law of master and servant, the driver must be acting within the scope of his employment, and

the use of the vehicle must have been in the service of the owner or while about the owners business.'' 42 C. J., 1099, sec. 861; Core v. Resha, 140 Tenn., 408, 204 S. W., 1149; Goodman v. Wilson, 129 Tenn., 467-468, 166 S. W., 752, 51 L. R. A. (N. S.), 1116; Telegraph Co. v. Lamb, 140 Tenn., 111, 203 S. W., 752; Davis v. Vulcanizing Co., 141 Tenn., 530, 213 S. W., 914; Lampley v. Fain, 6 Hig., 521.

''No hard and fast rule can be formulated by which it can be determined whether in a given case the driver of a motor vehicle is acting within the scope of his employment, but the question must be determined upon a consideration of the attending facts and circumstances and the presumptions and inferences therefrom. The driver may be acting in the scope of his employment, although he has no specific instructions to do the particular act involved, or to make the particular trip involved, or although he had deviated from his instructions; the act need not have been necessary to the performance of the employees duties, and it need not have been expressly authorized by the owner or known to him, and it may even have been disproved or forbidden. However a servant cannot be regarded as acting within the scope of his employment when, not being in the employment for that purpose, he uses a motor vehicle without the knowledge or consent of its owner, particularly where he does so against the owner's express instructions, or where he uses the vehicle for purposes other than the owner's and contrary to his express instructions.'' 42 C. J., 1102-1104, sec. 862; 18 R. C. L., 795, sec. 254.

The proof showed that Baskin obtained a license and the policy as required by statute, and employed Gill as driver, which made them public common carriers, but it is insisted as Gill was off duty and drove the young ladies in the car without compensation, for his own pleasure, without Baskin's knowledge or consent, that the relationship of carrier and passenger did not arise and therefore the automobile was not being operated as a common carrier, for hire. We find proof that Gill made the engagement in the afternoon, while on duty as driver, to carry the young ladies to the theater and agreed to drive them to Nashville and back to Jacksonville after the show. Each girl had a commutation ticket. Gill gave Miss Henderson one of these commutation tickets sometimes before the accident and she had ridden on it possibly twice and it had been punched. The tickets were delivered to Gill for sale and he was chargeable with them but said that he had not accounted to Baskin & Cole for the price of this ticket. The record does not show how Miss Whitson obtained her commutation ticket, but it was in her possession and had been punched on coming into Nashville be-

fore the accident. One traveling in an automobile for carrying passengers and in possession of a ticket, is, in the absence of countervailing circumstances, presumed to be a passenger for hire. See Huddy on Automobiles, 7 Ed., sec. 187; Meier v. Golden State Auto Corp., 50 Cal. Apps., 277, 195 Pac., 290.

The record shows that Baskin had instructed Gill to store the automobile in the Central Garage for the night after he had made his trips, but the record further shows that it was the duty of Gill to make extra trips, on schedule, should it be necessary to carry the passengers. The record shows that two other automobiles left the garage at ten o'clock that night, but it does not show how many passengers were in these automobiles. Of course, where the driver or servant turns completely aside from or abandons the purpose of the owner and is using the vehicle for his own business or pleasure, the owner is not liable. See 42 C. J., 1106, 1110, sec. 869; Core v. Resha, supra. But we think that it was necessary under the agreement for Gill to make this trip at ten o'clock in order to carry the young ladies back to Jacksonville in accordance with his agreement, or to have had some of the other automobiles at the garage carry them, and the fact that Baskin had no knowledge nor gave his express permission on that night is immaterial as we think that Gill had authority under the general instructions to make the trip when necessary and that it was his duty to do so. Hence we think that these young ladies were passengers and that the automobile was operated as a common carrier for hire in the business and service of the defendants, and that the trip was within the scope of the employment.

In determining the scope of employment, the test of the master's liability is not the motive of the servant, but whether that which he did was something his employment contemplated, and something which if he should do it lawfully he might do in his employer's name. Deihl & Lord v. Ottenville, 14 Lea, 197.

Where there is no question as to the deviation or departure of the scope of employment, it is then for the court. See 42 C. J., 1112, 1257-1258; 18 R. C. L., page 796, sec. 254; Goodman v. Wilson, supra. But ordinarily such questions are for the jury, especially where the driver had taken the car for a double purpose, one of which was a purpose of his own and the other a purpose connected with defendant's business. See 42 C. J., 1107, 1257-1258, 18 R. C. L., 797, sec. 254; Tutie v. Kennedy (Mo.), 272 S. W., 117. Hence we are of the opinion that the propositions, whether the automobile was being operated in the business or service of the defendants, or within the scope of the employment, and whether the automobile was operated as a common carrier for hire were questions that were properly submitted to the jury. See Dedman v. Dedman, 155 Tenn., 246, 291 S. W., 449; 1 Thompson on Negligence, sec. 615.

The last proposition above stated that there was no evidence that the accident occurred by any negligence of the driver or owner of the automobile in that the steering gears had suddenly become locked by the tightening of a nut so that the steering wheel could not be operated on turning the curve, and that the accident was unavoidable, presents a much more serious proposition, as an accident to a passenger which is occasioned by an automobile, when no negligence or wrongful act on the part of the owner or the driver of the machine is shown, can be classed as an unavoidable accident and no liability will attach to the driver or the owner. See Huddy on Automobiles, 7 Ed., sec. 347; Babbitt Motor Vehicles, 3 Ed., sec. 1311; 1 Thompson on Negligence, 2 Ed., secs. 28, 57.

There was some material testimony that the nut on the steering gears will not become suddenly tight, but does so gradually, and we think that this was sufficient to carry the case to the jury; but should the fact be established that the steering gears had become suddenly locked so as to prevent the proper guidance of the car, then the claim that the accident was unavoidable should fail, if the machine just prior to and at the time of the accident was being run at an excessive speed. In other words negligence in running the automobile at an excessive rate of speed may bar the claim of unavoidable accident. See Huddy on Automobiles, 7 Ed., sec. 349.

The proof shows that it was eighty-five feet from the beginning of the curve to the telephone pole where the car stopped, and there is proof that if the car was being run at thirty-five miles per hour it should have been stopped within fifty-four to seventy-two feet, if the brakes were properly working; and that Gill did not try to stop until he was within twenty-five feet of the telephone pole; so the question whether he was negligent in driving fast and in stopping should have been submitted to the jury. Hence we think that there was enough evidence on all these questions for the court to submit the cases to the jury; and the first two assignments of error are therefore overruled.

The third assignment of error that the court erred in holding that the pleas in abatement were special pleas in bar and should not be tried separately before the trial on the merits, is not well taken because it was not preserved in the motion for new trial. See Rhoton v. Burton, 2 Tenn. Apps. Reps., 164.

The motion for a new trial complained that the court had erred in declining to grant defendant's motion to try these pleas separately before going to a trial on the merits, but the motion does not raise the question whether the pleas were in abatement or in bar. The trial court held that they were special pleas in bar, to which the defendants excepted but did not preserve their exceptions in the motion for a new trial, hence they waived the exception on

this proposition. They afterwards filed pleas raising the general issue and each case was tried on all the defenses at the same time, which was proper under Chapter 121 of the Acts of 1897 permitting both pleas in abatement and in bar to be filed and tried at the same time. As it was, they received all the benefit of the pleas that they could have received had there been separate trials, hence this assignment must be overruled.

In the fourth and sixth assignments of error it is insisted that the court erred in defining negligence to the jury, wherein he charged that it meant the failure to exercise the highest degree of care consistent with the nature of the business while actually operating the automobile, in turning the curve, etc.; whereas the proof showed that the parties injured were not passengers for hire and if the defendants owed them any duty, they were only liable for the failure to exercise ordinary care; and that the court further erred in his charge by invading the province of the jury as he in effect peremptorily charged that the automobile was being operated as a common carrier.

We do not think that there is any error in this charge on these two propositions. While common carriers are not insurers of the safety of the passengers they are bound to exercise the highest degree of care consistent with the nature of the business. See Huddy on Automobiles, 7 Ed., sec. 187, 344; Cecil v. Jernigan, 4 Tenn. Apps. Reps., 80; Railroad v. Kuhn, 107 Tenn., 106, 131, 64 S. W., 202.

By these assignments of error it is insisted that negligence was incorrectly defined since the parties injured were not passengers for hire and that the defendants owed the duty of exercising only ordinary care. In these cases the Whitson girl held a commutation ticket, and in the absence of proof, it must be presumed that she paid for it, hence she was a passenger for hire. But with respect to the Henderson Girl it is well settled by the authorities that when one is accepted as a passenger by a common carrier, although riding free of charge or without payment of fare, that such passenger is entitled to the same degree of care as one traveling paying fare. See Street Railway Co. v. Caviness, 127 Tenn., 571, 157 S. W., 63; Railway & Light Co. v. Overby, 143 Tenn., 581, 223 S. W., 996; notes to 5 L. R. A. (N. S.), 721; 6 Cyc., 544; 10 C. J., 635, sec. 1055, p. 873 sec. 1310; 3 Thompson on Negligence, sec. 2646.

It is further insisted that the court in effect peremptorily told the jury that the car was being operated as a common carrier at the time of wreck, and this invaded the province of the jury. By reference to the court's charge it will be seen that the court specifically charged the jury that in order to recover it must be shown that Dave Gill, agent of the defendant, was operating the defendants'

automobile for and on their behalf as a common carrier. Of course the whole instruction must be read together and when so read together it is clear in its meaning the instruction will not be held bad because one clause is not clear when read alone.

By the fifth assignment of error it is insisted that the court erred in charging that the recent Act (Chapter 729, Private Acts of 1925), required parties operating motor vehicles in the transportation of passengers for hire, to procure insurance for the benefit of the persons, whether passengers or not, who are injured through the negligence of the operator, owners or agents and which Act declared such parties to be common carriers; and that the proof showed that the defendant Indemnity Company had issued a valid policy to the other defendants on the Studebaker Automobile which was in force at the time of the accident.

It is insisted that this was error because the court in effect charged (1) that the Indemnity Company was an insurer of the injured parties; and (2) that all of the defendants were liable regardless of whether the injuries were a result of negligence.

By reference to the court's charge it will be seen that the court specifically charged the jury that the Indemnity Company was liable only for negligence on the part of the defendant Baskin & Cole and their agent in connection with the speed of the car or of its steering equipment as alleged in several counts of the declarations, which may have been shown by the preponderance of all of the evidence to have been the sole and proximate cause of the injuries complained of. We think that the whole charge when taken together was sufficiently clear and that the jury was not misled, hence this assignment of error must be overruled.

By the seventh assignment of error it was insisted that the court erred in charging that the Indemnity Company's maximum liability on the policy for injury to the two girls was $10,000, but was limited to $5,000 for the negligent injury to each one, whereas the company's maximum liability was only $5,000 and it was insisted that this erroneous instruction may have affected the verdict of the jury in fixing the amount of the damages.

By the eighth assignment of error it was insisted that the court erred in refusing to charge the defendants' special request to the effect that the Indemnity Company could not be held liable unless the defendant Baskin was first held liable, and in any event defendant Indemnity Company's maximum liability was limited to $5000.

By the fifteenth assignment of error it is insisted that the court erred in ordering remittiturs of the verdicts from $8000, $500, and $250, to $4571, $286 and $143 as against the Indemnity Company, as the court was without power to modify judgments rendered

jointly against the defendants on the ground of correcting erroneous charge to the jury.

We think that these assignments of error are not well made and should be overruled. An error bearing solely upon the amount is cured by remittitur. See Railroad v. Johnson, 7 Hig., 458.

An error committed in instructions upon elements of damage may be cured by a remittitur. See Rosenbaum v. Herron, 5 Hig., 630.

An error in verdict may be cured by a remittitur. See Railway v. Overcast, 3 Hig., 235.

The court's failure to charge correctly on the duty of the jury to mitigate the damages on account of contributory negligence of the deceased is not reversible error, where the defendant receives the full benefit of a correct charge by a remittitur entered upon the verdict. See Railroad v. Martin, 113 Tenn., 266, 87 S. W., 418.

Where a verdict is merely excessive, the court may order a remittitur. See Grant v. Railroad, 129 Tenn., 398, 165 S. W., 963; Cumberland Telephone Co. v. Hartley, 127 Tenn., 184, 154 S. W., 531.

The eighth assignment of error cannot be considered because the special request was not preserved in the bill of exceptions. See Rhoton v. Burton, 2 Tenn. Apps. Reps., 171-172. A motion for a new trial is a pleading and is not evidence. See Hood v. Grooms, 4 Tenn. Apps. Reps., 515. It results that these three assignments of error must be overruled.

The ninth assignment of error is that the court erred in charging that the plaintiff J. C. Henderson should recover for loss of services of his minor daughter, together with the expense incurred on account of such injuries. It is provided by Shannon's Code, sec. 4503 that:

"A father, or, in case of his death or desertion of his family, the mother may maintain an action for the expense and the actual loss of service resulting from injury to a minor child in the parents service or living in the family."

It is insisted that it was error because the proof showed that she had been working for herself and enjoying the full rights of emancipation and that there was no proof that she was in her father's service or living in his family at the time.

We think that the proof shows that Miss Henderson was a minor and was a member of her father's family, although she was at Jacksonville at work. After her injuries she returned home until she recovered and was able to go back to work. Her father was entitled to her services and we see no reason why he should not recover. See Memphis Steel Construction Co. v. Lister, 138 Tenn., 313, 197 S. W., 902; Wallace v. Cox, 136 Tenn., 69, 188 S. W., 611.

591

By the tenth assignment of error it was insisted that the court erred in refusing to charge defendant's special request that J. C. Henderson should recover only $37 paid out for trained nurse hire, as his daughter was not in his services or a member of his family. We think there is nothing in this assignment for two reasons; (1) Because she was a member of his family; and (2) Because this special request was not preserved in the bill of exceptions. See Rhoten v. Burton, supra.

By the eleventh assignment of error it is insisted that the court erred in charging the jury that the payment of fare was not essential to the establishment of the relation of carrier and passenger, and that the plaintiff might recover for personal injuries resulting directly from want of ordinary care as heretofore defined, which resulted in the court charging both theories of ordinary care and the highest degree of care, which may have confused the jury and prejudiced the defendants.

We do not think that this assignment of error is well taken. As hereinabove stated, where a passenger is accepted as such by a common carrier, even though he pays no fare, the carrier is liable for the highest degree of care. Therefore the portion of the charge on which this assignment was based could not have prejudiced the defendants' rights, but, on the other hand, was to their advantage, and they are in no position to complain.

By the twelfth assignment of error it is insisted that the court erred in failing to charge the law with reference to the plaintiff's duty to exercise proper care while riding in the automobile. This assignment was withdrawn and is not well taken because the defendants did not make any special request on the subject.

The thirteenth assignment of error is that the court erred in refusing to charge defendants' special request to the effect that if the plaintiffs were not passengers for hire then the defendants were required to use only ordinary care. This assignment of error cannot be considered because the request was not preserved in the bill of exceptions. See Rhoten v. Burton, supra.

By the fourteenth assignment of error it is insisted that the verdicts were so excessive as to evince passion, prejudice or caprice on the part of the jury. Upon an examination of the whole record we think that this assignment of error is not well made and that the verdicts are not excessive, and this assignment must be overruled.

It results that all the assignments of error are overruled and the judgments of the lower court are affirmed. Judgments will be entered in this court for the amounts of the judgments rendered below, together with interest from December 6, 1926, and for the cost

of the causes in the court below. The costs of the appeal are adjudged against plaintiffs in error and the sureties on their respective appeal bonds, for which execution will issue accordingly.

Faw, P. J., and DeWitt, J., concur.