CALLIS v. CAPITOL CHEVROLET, INC. (three cases).—171 S. W. (2d) 828.

Middle Section. March 13, 1943.

Petition for Certiorari denied by Supreme Court, May 29, 1943.

Ben West and R. C. Boyce, both of Nashville, for plaintiffs in error.

Hume, Howard, Davis & Gale, of Nashville, for defendant in error.

HICKERSON, J. Capitol Chevrolet, Inc., a dealer in automobiles in Nashville, Tennessee, sold and delivered to Albert West a new Chevrolet automobile on Saturday, January 25, 1941, about nine o'clock at night. Part of the purchase price was paid in cash or its equivalent and the balance was represented by a conditional sale contract. This conditional sale contract was not executed until Monday, January 27, 1941, because the office force of Capitol Chevrolet, Inc., had already left before the sale was made on Saturday night, January 25th. The office of the County Court Clerk of Davidson County was closed at the time this purchase was made on Saturday night so it was impossible for the purchaser to buy license plates for the car. In order that the purchaser might use the car the salesman of the dealer agreed that he might use a dealer's license tag until his own license plates could be purchased. This dealer's tag was put on the car on Saturday night and the purchaser took the car home with him and began using it. The purchaser worked on a construction job at Camp Forrest, Tullahoma, Tennessee, as a carpenter, and was compelled to go to his job on Sunday afternoon, January 26th. He drove the car to Tullahoma with the dealer's tag on it and kept the car at Tullahoma until he came back to his home in Davidson County on Saturday night, February 1st. Since he was out of town during the entire week at the time that license plates could be bought for his new car, the purchaser got one of his friends to buy his license plates for him. Albert West, the purchaser, testified in regard to these plates: "I had them purchased by one of the Bohannon boys a day or two after I purchased the car, and he had held them for me at his home

pending my return to Nashville. It was on my way there to pick them up that the accident occurred.''

No notice was given by the Chevrolet Company of the sale of this car. It was a new car and no license plates had ever been issued for it, and, therefore, it was not registered in the name of any owner at the courthouse until the license plates were issued to Albert West.

On Saturday night, February 1, 1941, Albert West was driving this automobile in the City of Nashville on the Gallatin Pike, going to the home of his friend, Bohannon, to get the license plates for the car. While on this trip, and on this mission, Albert West had an accident and seriously injured some pedestrians who were crossing Gallatin Pike where it intersects with Seymour Avenue. The present suits were brought against Capitol Chevrolet, Inc., a corporation, and Jesse Albert West to collect damages for injuries sustained as a result of this accident. Each of the three declarations contains the following allegation: ''At the time of the injuries hereinafter complained of the defendant, Capitol Chevrolet, Inc., was the owner of a certain Chevrolet automobile which had thereon at the time the Dealer's License Plates of the defendant, Capitol Chevrolet, Inc., to-wit: License Plates Number 107-21, which automobile was at said time being driven and operated by the defendant, Jesse Albert West, and in the course and scope of the business of the defendant, Capitol Chevrolet, Inc., in a southerly direction on and along the Gallatin Pike at or near the intersection of said pike and Seymour Avenue, and within the corporate limits of the City of Nashville.''

The suits were dismissed as to Jesse Albert West and proceeded to trial against Capitol Chevrolet, Inc., upon pleas of not guilty.

At the conclusion of all the evidence the trial court directed a verdict in favor of defendant in each of the three cases and dismissed the suits. From these judgments plaintiffs appealed in error to this Court.

The proof unquestionably shows that Jesse Albert West purchased this automobile from the defendant on Saturday night, January 25th about nine o'clock, and the car was delivered to him at that time. After that time the purchaser owned and operated the car on his own business until the accident occurred, which is the basis of these suits. He never had worked for the defendant and was never the agent of. the defendant and was not working for the defendant at the time the accident occurred, but was on his own personal business which had no connection whatever with the business of defendant. These facts being established, without dispute, the questions presented by the assignments of error in this Court are questions of law. The Chevrolet Company did not report the sale of this car to the County Court Clerk of Davidson County as required by Code Section 1152.8 which provides: "It shall be the duty of every dealer in motor vehicles to make weekly reports to the commissioner of finance and taxation in duplicate, which report shall show all vehicles which the dealer has taken title to or sold during the period embraced in such report; such report shall give the make, model, motor number, license number, and the name and address of the purchaser or seller of such vehicle. Any person, firm or corporation violating any provision of this section shall be guilty of a misdemeanor, and, upon conviction shall be subject to a fine of not less than twenty-five ($25.00) dollars nor more than fifty ($50.00) dollars for each offense."

Furthermore, Capitol Chevrolet, Inc., permitted the purchaser of this automobile to use the dealer's tag which had been issued to the Chevrolet Company in violation of Code Section 1152.11, which provides: "All dealers in or manufacturers of motor vehicles may, instead of registering each such motor vehicle owned by him, make application to and receive from the commissioner of finance and taxation through the county court clerk a general distinguishing number or mark. This certificate and number shall be of a different color and number from that of any other owner of a motor vehicle, and shall be known as a dealers' number, and said number may be used by said dealer or manufacturer upon any new or second-hand motor vehicle the property of the dealer held for the purpose of trade or resale, but said number shall be used only on motor vehicles being demonstrated to a prospective purchaser by the dealer or his lawfully authorized agent or being operated by a mechanic for testing purposes within a radius of one hundred miles of the dealer's place of business."

Code Section 1152.3 provides: "As a condition precedent to the operation of any motor vehicle upon any highway, road, street or other public thoroughfare in Tennessee, the owner or operator thereof shall first register such vehicle with the department of finance and taxation in the manner hereinafter provided, and shall pay the registration fees hereinafter imposed. Registration shall be effected through the county court clerk in the county wherein the owner resides or maintains headquarters or citizenship in this state when such residence or headquarters is capable of identification, and in such manner as the commissioner of finance and taxation may

prescribe when no resident or headquarters in this state is readily ascertainable.''

Plaintiffs-in-error contend that the violation of these Code Sections by the Chevrolet Company makes it liable to them for the consequences of the accident which is the basis of these suits. The trial court held that there must be a causal connection between the violation of the Code Sections and the accident in order to fix liability upon the Chevrolet Company and that no causal connection was shown. Wherefore, he directed verdicts for the defendant.

Plaintiffs-in-error rely upon the case of United States Fidelity & Guaranty Co. v. Allen, 158 Tenn. 504, 14 S. W. (2d) 724. The automobile involved in that case was used in the business of carrying passengers for hire between Gallatin and Nashville. It had been owned and operated in that business by Jones and Dillon. This firm of Jones and Dillon had procured from the United States Fidelity & Guaranty Company a bond, or insurance policy, conditioned to pay any damages caused by the negligent operation of the automobile in that business. They sold the automobile to Cloyd Neel, who continued to operate the car in the very business for which it had been bonded and used by Jones and Dillon for about three weeks, when a little boy was killed by the negligent operation of the car. Neel had filed no bond for the protection of the public, and the automobile still bore the license plates issued to Jones and Dillon by the County Court Clerk of Davidson County. No notice had been given by seller or purchaser to the County Court Clerk of any change of ownership in the car. Under these facts, the Court held, page 508 of 158 Tenn., page 725 of 14 S. W. (2d):

"Our statutes requiring the registration of automobiles were enacted not alone for revenue purposes, but as a means of identification of the owner of any machine negligently operated to the damage of person or property and by way of protection to those so injured by such negligent operation.

"Chapter 162 of the Acts of 1921 and chapter 59 of the Acts of 1923 provide that, in an action for damages inflicted by the operation of an automobile, proof of registration of such car in the name of any person is prima facie proof of ownership, and that proof of ownership is prima facie evidence that the car was being operated under the authority and on the business of the registered owner at the time the damages were inflicted.

"In the case before us, Jones & Dillon made no attempt to comply with the provisions of section 23 of chapter 149 of the Acts of 1919. They ignored the requirement which the law attached to every sale of an automobile. The statute makes such conduct penal.

"Since the policy of the law has been so plainly declared by the statutes referred to, we think neither Jones & Dillon nor their insurer can be permitted to denude themselves of liability for the negligent operation of an automobile which has been disposed of in a manner forbidden by law. Jones & Dillon cannot be permitted to set up illegal conduct to escape responsibility imposed by statute upon the registered owner of an automobile."

From later decisions of the Supreme Court it is clearly shown that the Court intended to limit the rule announced in United States Fidelity & Guaranty Co. v. Allen to the facts of that particular case.

Plaintiffs-in-error also rely on McCoy v. Willis, 177 Tenn. 36, 145 S. W. (2d) 1020. The facts of this case

show a plain case of fraud, conspiracy and collusion on the part of the defendants to escape the payment of the privilege tax imposed upon retail ice dealers in Memphis, Tennessee. The Court held Independent Ice Company, the registered owner of a truck involved in an accident, liable for injuries sustained as a result of the accident, although the truck at the time of the accident was being operated by an agent of Henry F. Willis and Imogene B. Willis, individual ice dealers. The Court based its decision upon the following principle: "It seems to us that the course of conduct of Independent Ice Company, its manifestations, are abundantly sufficient, under these authorities, to create an agency for it on the part of those whom it authorized to do business in its name. Certainly these retail dealers were proceeding in the business of Independent Ice Company—the business for which it was organized. The retail dealers were likewise operating just as Independent Ice Company intended they should operate. Having made them its agents, by its course of conduct, Independent Ice Company cannot say that there is no causal connection between its course of conduct and the negligent acts of such agents."

In later decisions the Supreme Court has distinguished the case of United States Fidelity & Guaranty Co. v. Allen from other cases under consideration and has pointed out the limits to the rule announced in that case, and the reason for the rule in that case.

Chief Justice Green wrote the opinion of the Court in United States Fidelity & Guaranty Co. v. Allen and in McCoy v. Willis. He summarized the holding of the Court in the former case in these words in the latter case: "It was held that the surety of the original owners was liable on this bond for damages inflicted by negligent

operation of the vehicle some three weeks after it was sold and while it was being operated by the purchasers. The court denied to the registered owners the right to repudiate ownership and in substance held that permitting the conveyance to be continued in operation in the very business to which the owners had devoted and bonded it was effective to constitute the purchasers the apparent agent of the original owners. See, also, Bright v. Neal, 168 Tenn. 11, 73 S. W. (2d) 686, and Biggert.v. [Memphis] Power & Light Co., 168 Tenn. 638, 80 S. W. (2d) 90.''

It will be noted also that the Court held the Independent Ice Company liable in McCoy v. Willis on the ground that the conduct of this company showed that Henry F. Willis and Imogene B. Willis were the apparent, if not the actual, agents of Independent Ice Company.

We think the facts of the instant suit bring it within the rule of two recent decisions of our Supreme Court, which were cited in McCoy v. Willis, and to which we now refer. In Bright v. Neal, 168 Tenn. 11, 14, 73 S. W. (2d) 686, 687, after distinguishing the facts under consideration from the case of United States Fidelity & Guaranty Co. v. Allen, the Court said:

''If it be conceded that the vehicle here was still in law the property of the original owner, still there is no showing that it was being used in connection with any business of his. He had sold the vehicle to a dealer and the dealer had sold it to a third person. The truck was not being used in a business which by his license and his bond the former owner represented to the public was a business of his own. To hold the owner of an automobile liable for its operations, it must be ordinarily shown that the driver was, at the time of the accident, in the master's

business and acting within the scope of his employment. Goodman v. Wilson, 129 Tenn. 464, 166 S. W. 752, 51 L. R. A. (N. S.), 1116.

"It appearing from the undisputed proof that the driver was not the agent or employee of the registered owner, but that Bright was using the truck in the business of Bright and Newhouse when the accident occurred, the Barber Tire Company would not be liable. See annotations, 42 A. L. R. 899; Baskin & Cole v. Whitson, 8 Tenn. App. 578; Phillips-Buttorff Mfg. Co. v. McAlexander, 15 Tenn. App. 618; Frank v. Wright, 140 Tenn. 535, 205 S. W. 434."

In Biggert v. Memphis Power & Light Co., 168 Tenn. 638, at page 643, 80 S. W. (2d) 90, at page 91, the Court, also, considered the case of United States Fidelity & Guaranty Co. v. Allen and then said: "Now, as we understand the argument of counsel for plaintiff Biggert, a theory of liability on the part of these defendants is advanced based on (1) their failure to remove from the car the expired license tag, and (2) their failure to notify the county court of the sales made within three days. As before stated, we think the Kensinger Company complied substantially with this requirement, but, if this were not so, we can discover no causal connection between these omissions and the accident. This is not an action to recover penalties for statutory violations, but to recover damages for personal injuries. If a violation of a statute or law is shown, it must also be shown that such violation in some degree contributed to, or brought about, the injury. Causal connection must appear. This is the general rule."

And on page 645 of 168 Tenn., on page 92 of 80 S. W. (2d): "It will have been seen that two independent

theories are relied on for plaintiff, one, that the Memphis Power & Light Company is liable for the injuries inflicted by the negligence of Frank, because the Power Company was the registered owner, who, under the Allen case, could not be heard to deny its ownership. But, it being stipulated here that Frank was on a 'personal mission,' under the Bright case, it is immaterial who was the owner, registered or otherwise; no agency or master and servant relationship appearing.

"The second theory is that all the defendants were parties to a violation of penal statutes requiring registration and notice of transfers and that, independent of questions of ownership or agency, they were therefore liable for any injury resulting from the car being on the highway, that having the car on the highway under such circumstances was negligence per se. But this state does not follow those courts holding that liability arises from a mere violation of a penal statute (known as the Massachusetts rule), unless the violation is the proximate cause of the injury."

In the present suit it was definitely shown that Albert West was on a personal mission at the time of the accident which had no possible connection with the business of Capitol Chevrolet, Inc. He was not an employee or agent of the Chevrolet Company at the time of the accident and had never been an agent or employee of the Company. Neither the failure of the seller of the automobile to Albert West to notify the County Court Clerk of the sale, nor the permissive use by the dealer of its tags until the purchaser could buy license plates operated to constitute the purchaser the actual or apparent agent of the seller. This being true, Capitol Chevrolet, Inc., would not be liable.

The trial court correctly admitted the testimony about which plaintiffs-in-error complain.

All assignments of error are overruled. The judgment of the trial court is affirmed with costs.

Felts and Howell, JJ., concur.