Deihl & Lord *v.* Ottenville.

DEIHL & LORD and JOHN DEIHL *v.* E. OTTENVILLE.

1. MASTER AND SERVANT. The master is liable for the acts of the servant done within the scope or course of his employment, but he is not responsible for such wrongful conduct of the servant as he had neither directed nor could be supposed to have authorized or expected the servant to do.

2. JUDGE AND JURY. *Evidence, weight of. Jury.* The weight of evidence is for the jury to determine, and the judge should not indicate his views on same.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. FRANK T. REID, J.

DEMOSS & MALONE, J. W. BAKER and E. T. MORRIS for Deihl & Lord.

E. H. EAST and BATE & WILLIAMS for Ottenville.

DEADERICK, C. J., delivered the opinion of the court.

Defendant in error brought suit against plaintiffs

in error in the circuit court of Davidson county for conversion and destruction of a large number of beer boxes and bottles. Verdict and judgment for $1,115 were rendered in favor of plaintiff below, and the defendants have appealed in error to this court.

The Referees have reported in favor of the affirmance of the judgment, and the plaintiffs in error have excepted to their report.

The plaintiffs in error, Deihl & Lord, were extensively engaged in bottling beer, etc., in Nashville for retail traders of the city, as well as other customers within and beyond the limits of the State.

Ottenville was likewise engaged in Nashville in the same business, and the bottles and boxes of both were returned by their customers outside of the city by railroads or steamboats, without charge, and within its limits by their wagons respectively, and by arrangement between the plaintiffs and defendant it was agreed, as the boxes and bottles of the one were often by mistake sent to the other, that the party receiving boxes and bottles belonging to the other should wash the bottles and return them with their boxes ready to be refilled to the true owner.

Ottenville, sometime after this arrangement was made, brought this suit, claiming that the defendants below had wrongfully and carelessly lost, destroyed or converted a large number of boxes and bottles belonging to him.

The exceptions of plaintiffs in error are mainly to alleged errors in the charge of the court, which the Referees report are not erroneous, and to the omis-

sion to report as to other parts of the charge which it is insisted are erroneous.

The first exception is to the failure of the Referees to notice a part of the charge stated in the exception, insisting that said charge was erroneous. There was evidence tending to show that the servants of defendants below had wantonly and designedly destroyed bottles of plaintiff while washing them, and those belonging to defendants.

The court charged the jury that if they found that "any of the defendants' servants, in a spirit of wanton mischief or boyish recklessness, or out of spite to plaintiff because of his being a rival of their employers, while in the course of their employment, as heretofore explained to you in this charge, broke plaintiff's bottles, or destroyed his boxes, even though unknown to defendants, and in violation of their express orders, defendants are nevertheless liable."

His Honor added: "I said that if the servant's wrongful act was done in the course of his employment, the master would be bound to answer for its consequences; for instance, if one of the defendants' servants while engaged in washing his employers' bottles at the wash-tub, came across one or more of the plaintiff's bottles, and threw them on the floor and broke them in a spirit of wanton mischief, defendants are answerable to plaintiff in damages. If such servant, however, while not so engaged, having, say an hour of leisure on his hands, came across a lot of plaintiff's bottles stored in defendants' house, or on their premises, and in a spirit of wanton mis-

chief broke and destroyed them, he alone and not his employer would be liable, for his wrongful act was done outside and not in the course of his employment."

In the case last put there can be no doubt the master would not be liable, for it is very clear the wrongful act was not done within the scope of the servant's employment.

To make the master liable for the acts of the servant, it must appear that the wrongful act was done by the servant within the scope or course of his employment as it is variously expressed by text-writers: Cooley on Torts, 534; Story on Bailm., sec. 402; Story on Agency, secs. 452, 456; Sch. Dom. Rel., 636.

The author last above cited says: "The universal rule is, that whether the act of the servant be of omission or commission, whether his negligence, fraud, deceit, or, perhaps, even wilful, misconduct, occasion the injury, so long as it be done in the course and scope of his employment, his master is responsible in damages to third persons." 436.

The difficulty seems to be, not in finding the general principle governing this class of cases, but in the application of the principle to the facts of particular cases. The charge complained of states the principle correctly, and it goes further in stating, hypothetically, facts entitling plaintiff to a verdict, which the evidence tends to show exist in this case. The charge in effect tells the jury if defendants' servant, out of wanton mischief, or spite towards plaintiff, broke the bottles, the - master would be liable—that if, being en-

gaged in washing his employer's bottles, and finding some of plaintiff's among them, he threw them on the floor and broke them wantonly, this would be an act done within the scope of his employment.

In Story on Agency, section 452, the doctrine of the liability of the master for the torts, negligence, etc., of his servant, is laid down, but in section 456 it is said that the just limitation of this liability is that the tort or negligence must occur in the course of the agency. For, it is 'added, the principal is not liable for the torts or negligence of the agent in any matter beyond the scope of the agency. Hence, the principal is never liable for the unlawful, malicious or willful acts of the agent. By way of illustrating the cases in which he is and is not liable under the rule stated, it is said if a servant driving his master's carriage, willfully or maliciously runs against or upsets another carriage, the master is not liable. So where the driver of an omnibus, contrary to the master's orders, prevented passengers from entering another's omnibus, the master was not liable. But where an omnibus conductor ·dragged a drunken passenger out of the omnibus with *unnecessary* violence, and he was injured by another passing vehicle, the master was liable. The reason of non-liability in the first case was that the driver was acting outside of the scope of his employment and from his own malicious motives, whereas in the second he had the discretion under his employment to remove a drunken man from the omnibus, and was in the performance of his duty in removing him, and the master was responsible for

the right performance of a duty in the scope or course of his employment.

In Story on Bailments, section 402, the same distinction is taken, and it is said, if a servant drives his master's coach, by his negligence, against another's coach, the master is liable, but it is otherwise if the servant willfully and wantonly drives against the other coach. And if the servant of a blacksmith, in shoeing a horse, negligently injures him, the master is responsible, but if the servant does the act maliciously in order to lame him, the master is not liable.

In Cooley on Torts, page 535, it is said the liability of the master only arises when that which is done is within the real or apparent scope of the master's business. It does not arise where the servant has stepped aside from his employment to commit a tort, which the master neither directed in fact nor could be supposed from the nature of his employment to have authorized or expected the servant to do. The principles announced are illustrated, by the author, by showing that a conductor in charge of a railway train who wrongfully ejects a passenger subjects the company to a claim for damages. The reason is, that the conductor has charge of the train, clothed with discretionary power, and the wrong was done in the exercise of the authority conferred upon the conductor. But if the conductor leaves the train to injure his personal enemy the master is not liable. This would be a personal trespass of the conductor, whereas the other, in ejecting the passenger, would be an act done in the course of his employment. The same au-

thor says, page 536, that in determining whether or not the master shall be held responsible, the motive of the servant is important.   If he supposes he is acting in furtherance of the master's interest under a discretionary power, the case will generally have an aspect quite different from what it would present if it were manifest that the servant was actuated by malice, irrespective of the master's interest.   But the motive is not conclusive; the test of the master's responsibility is, not the motive of the servant, but whether that which he did was something his employment contemplated, and something which if he should do it lawfully he might do in his employer's name.

Says Hoar, J.: "If a servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury not within the scope of his employment, the master is not liable": Cooley on Torts, 536–7.

In Schouler's Dom. Rel. the same general principles are maintained.   On page 636 (2nd edition) it is said that a proper analysis of the cases where a master is held responsible for his servant's torts would show either that the servant was negligent within the scope of his employment, or else that he displayed a wanton or reckless purpose to accomplish his master's employment in a wrongful manner.   And on page 637 it is said: "A master is liable though the act of the servant was not necessary for the proper performance of his master's orders, or was even contrary

thereto, so long as the servant was acting in substantial execution of the master's orders.

The foregoing citations we think pretty clearly show what is meant by the term, within the scope or course of his authority, and what is meant by departing from or stepping aside from his employment to commit a tort.

Obviously to make the master liable for the servant's tort, it must be committed in a negligent or wanton and reckless manner in the execution or accomplishment of the business of the master: Schoul. Dom. Rel., 636. If the servant step aside from his employment, that is, abandon it for the time being, to commit a tort not within the course or scope of his employment, the master is not liable. We do not understand that it is necessary, within the meaning of that term, that he should literally and physically "step aside" from the *locus in quo;* he is serving his master in the performance of his legitimate duties before he can abandon or "step aside" from that service and commit a tort not within the scope of his employment. But where the wrong is done wholly for his own purpose, disconnected from the execution of his master's orders, the servant and not the master is liable. He has "stepped aside" from the course or scope of his employment.

This view is also maintained by this court in the case of *Puryear* v. *Thompson,* 5 Hum., 397: Puryear hired a slave of Thompson, and for insubordination Puryear had the negro tied, and commenced whipping him, and then handed the cowhide to Newcomb, his

overseer, and told him to give the negro a good whipping. Newcomb took the cowhide and commenced whipping the negro, and Puryear left. The negro died under the punishment, and near to him was a piece of timber, which probably was used by Newcomb in punishing the negro. This court said, "if the overseer, in pursuance of defendant's directions, intended only to chastise the negro until he should be humbled, so negligently and recklessly inflicted the blows, and so used instruments of punishment as to take the life of the negro, the defendant would be liable. But if the servant abandoned the purpose of chastising the negro until he was humbled, and employed instruments of torture to gratify his malice, etc., the master would not be liable.

In this case, although the punishment was continuous, and directed in the first instance by the master, the court declared the master was liable for his servant's negligence while in his employment, but not for torts or willful acts done without his authority, and that the jury should have been left free to determine whether the blows were intended to take life, or whether not intending that result, he was negligent and reckless of the means employed.

In the case of Cantrell against Colwell the same doctrine is quite as distinctly held. There Cantrell's wife in her husband's absence procured another to turn Colwell's mare out of her enclosure, into which the mare had jumped. In following and chasing the mare around the enclosure to drive her out, the employe threw a stone at her and broke her leg. Suit

was brought against Cantrell and wife before a justice, and on appeal judgment was rendered for plaintiff, and defendants appealed. This court said the case must be governed by the general principles applicable to the relation of master and servant, or principal and agent, for the law as to both relations is based upon the same principles and analogies.

The general doctrine is then laid down that the master is liable to third persons in a civil suit for the tortious or wrongful acts of his servant if these acts are done in the course of his employment in his master's service. But, it is added, the master is not liable for the willful and unauthorized acts of the servants if they be done, not in the execution of, but altogether aside from, the authority given by the master, unless they are subsequently ratified or adopted by him for his own benefit. The master does not undertake for the conduct of his servant beyond the scope of the authority entrusted to him, and consequently his wilful and unauthorized acts cannot be regarded as the acts of his master. The learned judge who delivered the opinion in the case of *Cantrell* v. *Colwell*, says: "The distinction, notwithstanding the apparent confusion to be met with in some of the cases, is clearly enough illustrated in the books between an injury to a third party arising from the negligence and unskillfulness of a servant, who really had no other purpose at the time but the execution of the duty confided to him by his master, and a similar injury resulting from the willful and unauthorized act of the servant not done, in the execution of

his master's orders, but altogether aside from the
authority given, and prompted, perhaps, by his own
malice or other improper motive. . The case of *Pur-
year* v. *Thompson,* 5 Hum., is cited as illustrating the
distinction and sustaining the conclusion of the court
that the suit of Colwell could not be maintained, be-
cause it was said the request to. turn the mare out
of the field could not be tortured to imply an author-
ity to injure or destroy the animal in so doing: 3.
Head, 471.

It will be observed that apparently the servant in
the case · last cited inflicted the injury in the course
of his efforts to carry out the instructions to drive
the animal from the field, yet the court held it was
not done within the scope of his employment, and
therefore the master was not liable.   In the case at
bar the question is presented in a stronger aspect.   It
is assumed that the master is liable if the servant
who was employed to wash bottles should wantonly,
purposely or maliciously break them.   This instruc-
tion of his Honor to the jury was erroneous, as
authorizing them to hold defendants below responsible
for such conduct of their servant as the servant alone
was liable for.

While it is reasonable that a master should be
held liable to third persons for damage done by his
servant's negligence in the performance of service to
which the master had assigned him, yet the master
ought not to be held responsible for such wrongful
conduct of the servant as he had neither directed
him to do, nor could be supposed to have authorized

or expected the servant to do. A liability so exten-
sive would make the master guarantor of the servant's
good conduct, and would impose responsibilities which
prudent men would hesitate to assume: Cooley on
Torts, 533.

The plaintiff in error also excepts to the action of
the Referees in holding the charge as to the con-
version of boxes to be correct.

The charge is, "if any of plaintiff's boxes came
into possession of defendants, and plaintiff's name was
planed off said boxes by defendants or their servants,
and the boxes were used by defendants in their busi-
ness, this would be a conversion." A conversion con-
sists in the appropriation of the thing to the party's
own use or beneficial enjoyment, or in its destruction
or exercising dominion over it, in exclusion or de-
fiance of plaintiff's right, or in withholding possession
under a claim of title. So also using the thing
without license of the owner, or the misuse or deten-
tion of it by the bailee or finder, has been held to
be a conversion: 2 Gr. Ev., sec. 642.

The charge might properly have been more full
and explicit upon this point. But obliterating plain-
tiff's marks, and using the boxes as their own, placing
their own name upon them by defendants, probably
would amount to a conversion.

The third exception is to that part of the charge
which instructs the jury if the house was small, and
defendants exercised personal supervision over their
employes, and were constantly or frequently present,
passing and repassing through the rooms, you would

be warranted in inferring knowledge on their part of the acts of their employes, unless it appears such acts were studiously concealed from defendants. The acts referred to are the alleged breaking and destruction of bottles and boxes of plaintiff, and changing the marks on boxes.

The charge is perhaps liable to the objection that it is indirectly telling the jury that the evidence is sufficient to establish the contested fact, whereas the weight of evidence is for the jury to determine. It is competent to go to the jury for the purpose of proving the fact, and it is a question for the jury to say whether it does satisfy them of the truth of the proposition contended for.

As to the fourth exception, no part of the charge is cited as sustaining the exception.

The fifth exception is a correct abstraction, with some limitations; not technically such an exception as can be noticed as being taken to any ruling or order contained in the record.

The sixth, seventh and eighth exceptions are general, without specifications of the errors complained of.

The first request as to conversion is substantially disposed of in this opinion, and the second and third, which, as well as the first, were refused upon the ground that the court had already charged as requested.

For the reasons herein indicated, the exceptions to the report of the Referees must be allowed, the judgment reversed, and the cause remanded for a new trial.