## LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE *v.* SARAH RUSSELL.*

### (*Nashville*, December Term, 1931.)

#### Opinion filed July 2, 1932.

---

*On liability of employer for torts of employee, see 18 R. C. L., 775, 795, 796; R. C. L. Perm. Supp., pp. 4503, 4508; R. C. L. Pocket Part, title Master and Servant, sections 236, 254.

As to liability of principal for torts of agent, see 21 R. C. L., 849, 850; R. C. L. Perm. Supp., p. 5116; R. C. L. Pocket Part, title Principal and Agent, section 28.

M. P. Estes, for plaintiff in error.

Jeff McCarn, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

Mrs. Russell sued the Insurance Company for damages. After stating that she was a policyholder in said company and that its agent called at her home on August 8, 1931, to collect the premium due, as was his custom, the declaration alleges the following:

"Plaintiff is a woman of rather timid nature and easily frightened and excited, and instead of coming to the door and making himself known and making his business known, the defendant's said agent or collector walked to plaintiff's door, knocked on the door, causing plaintiff to come to the door, which was open, but there was a screen door standing closed, and defendant's said agent had his hat pulled down so that his face could not be seen by plaintiff and he stood in front of her and near her in that condition with a pistol presented at plaintiff for the purpose of frightening her and which did frighten her so that she was overcome to such an extent that she lost control of herself, became helpless, had to be put to bed

and attended by a physician. She was confined to her bed for more than a month, was attended by a physician, and was caused to suffer loss of sleep and caused to become extremely nervous, from all of which plaintiff suffered and was damaged in the sum of $10,000, for which she sues and demands a jury to try the cause.''

From the foregoing it may be inferred that the agent never spoke a word, did not demand the premium due, and did or said nothing to indicate that he was there as the representative of the Insurance Company. As to whether the agent was playing a prank, attempting to commit robbery or some other crime, or was mentally unbalanced, the declaration is silent. Clearly his conduct was not authorized or condoned by the company, and his act was not such as was contemplated by his employment, or as might reasonably have been anticipated by his employer in connection with his duties.

The case was tried upon the following stipulation, to-wit:

''In this cause it is agreed that the facts are as stated in the declaration and if the facts so stated make out a case of liability against the defendant in favor of the plaintiff, the Court is authorized to render a judgment against the defendant in favor of the plaintiff for the sum of One Thousand ($1,000) Dollars, subject to defendant's right to except and appeal to the Supreme Court for a reversal of such judgment.''

The trial court entered judgment in favor of Mrs. Russell for $1,000. This was error since the declaration states no cause of action.

In *Deihl & Lord* v. *Ottenville*, 82 Tenn., 191, 196, this Court said: ''In Cooley on Torts, page 535, it is said the liability of the master only arises when that which is done

is within the real or apparent scope of the master's business. It does not arise where the servant has stepped aside from his employment to commit a tort, which the master neither directed in fact nor could be supposed from the nature of his employment to have authorized or expected the servant to do."

Further on in the opinion the following statement appears: "If the servant step aside from his employment, that is, abandon it for the time being, to commit a tort not within the course or scope of his employment, the master is not liable. We do not understand that it is necessary, within the meaning of that term, that he should literally and physically 'step aside' from the *locus in quo;* he is serving his master in the performance of his legitimate duties before he can abandon or 'step aside' from that service and commit a tort not within the scope of his employment. But where the wrong is done wholly for his own purpose, disconnected from the execution of his master's orders, the servant and not the master is liable. He has 'stepped aside' from the course or scope of his employment."

In *Hunt-Berlin Coal Co.* v. *Paton,* 139 Tenn., 611, it was held that the wilful tort of the servant could be imputed to the master in three classes of cases: (1) Where the master is under contract, expressed or implied, with the person wronged, or under a law-imposed duty, requiring the master to refrain from mistreatment of him; for example, assaults upon passengers by railway employes. (2) Where the nature of the employment or the duty imposed on the servant is such that the master must contemplate the use of force by the servant in performance, as a natural or legitimate sequence; for example, cases involving assault and homicides by special officers in the

master's employ. (3) Where a dangerous instrumentality is intrusted by the master to the servant, which has capability of harm to the public, such as a locomotive whistle wilfully sounded.

It is apparent that the case under consideration does not fall within either of the enumerated classes; hence there is no liability so far as the company is concerned.

The law as to master and servant and principal and agent is analogous, and is based upon the same principle. *Cantrell* v. *Colwell*, 40 Tenn., 472; *Deihl & Lord* v. *Ottenville, supra.*

Reversed and suit dismissed.