TERRETT *v.* WRAY *et al.*

(*Jackson*, April Term, 1937.)

Opinion filed May 22, 1937.

J. L. FRY, of Union City, for plaintiff in error.

BURNETT & DONALDSON, of Tiptonville, for defendant in error.

MR. SPECIAL JUSTICE F. T. FANCHER delivered the opinion of the Court.

This suit for damages for personal injuries was brought in the circuit court of Lake county by Evans Terrett, by his next friend, J. E. Terrett. Plaintiff dismissed his suit against Delmas Wray.

The case is here appealed from the judgment of the court below sustaining a demurrer to the declaration.

Delmas Wray was a schoolboy at Tiptonville. The defendant, Mrs. Wray, had other children in the same school. Mrs. Wray, who owned an automobile, sent her son, Delmas, to the schoolhouse after the children. Before he came home with the children he rigged up a wire connecting one of the handles of the door of the car to a battery, so that one, by grasping the handle of the door, would receive an electric shock. After taking the children in the car and having started on his way home with them, the boy, Delmas Wray, invited Evans Terrett in the car to take a ride, and when the plaintiff took hold of the handle to open the door of the car he received a shock of electricity from which he alleges he suffered divers injuries.

It is further alleged that the action of Delmas Wray, in attaching the battery to the door handle, was done wantonly and willfully while he was in charge of the automobile which was used for the family purpose and while in charge of same at the request of and under the instructions of his mother, and while in the pursuance of his duties of conveying the children of the defendant. The different grounds of demurrer, with implications, state the legal proposition that, before a parent may be held liable for the tort of the child, it must appear that such tort was committed under the direct orders of the parent or be ratified by the parent, or was done within the scope of the child's authority or employment. The demurrer was sustained in general terms by the court. It is said that there was no causal relation shown to exist between the alleged tort and the service the son was employed to render.

The case must be considered under the general principles governing the liability of master for the acts of his

servant, or of the principal for the acts of the agent. We do not consider it useful here to discuss the family purpose doctrine.

██ ██ The act or negligence complained of must have been with reference to an act or matter within the scope of the authority, in the case of an agent, or within the course of the employment, in the case of a servant. Whether a case falls within the rule of liability under these general well-settled principles affords great variety of application, considered in its surroundings and with its background of time, place, and circumstance.

██ The act of the servant, to make the master liable, must be within the course of the employment when he is doing for the master, either the main act itself or some other act which can fairly and reasonably be deemed to be a proper means of doing the main act, or an ordinary and natural incident or a natural, direct, and logical result of it. Extraordinary, extreme, or prankish acts rarely can be attributed to the master as means or methods of carrying out an ordinary employment. There must be negligence of the servant within the course of employment and not aside from it to make the master liable. Was the prank of this boy, in attaching the battery to the door handle for the purpose of playing jokes, such a use or misuse of the car, while using it for his mother, as to make her liable?

The mother did not authorize the boy to do anything except to use the car to bring the children home from school. While so using it and performing that duty, he made use of the car for an entirely different purpose. The only connection the playing of the prank had with his bringing the children home was the use of the same instrument in carrying out the wholly different purpose.

A number of analogous cases in this state are cited in defendant's brief, illustrating the well-settled rule that, when the servant or agent, aside from the scope of employment, does an act, having no causal relation between the service to be rendered and the injury sustained by the plaintiff, the defendant is not to be held responsible for the resulting injury.

■■ This is not a case of a master confiding to his servant's use a dangerous instrumentality, which furnishes ground of liability, independent of the ordinary rules of *respondeat superior*. These dangerous instrumentalities are such as poisons, high explosives, spring guns, and the like. Railway locomotives with steam up, out upon the track, have frequently been so designated, but not an automobile. Even where the instrumentality is inherently dangerous, while some cases treat the liability as absolute, a greater number of authorities regard it as a situation wherein a high degree of care is required, but not imposing liability for a willful or wanton act such as playing pranks and practical jokes with the thing in question by the servant to whom it was confided. Mechem, Outlines of Agency, section 543, pp. 361, 362.

The following case well illustrates the governing principle. A father directed his minor son to get out the garden hose and sprinkle the lawn. While doing so, the boy, in a spirit of mischief, turned the hose off the lawn and sent a stream of water against a horse standing on the opposite side of the street, causing it to run away and injure the plaintiff. It was said by the court:

"If the act of the defendant's son in throwing water upon the plaintiff's horse was not the result of his careless handling of the garden hose while sprinkling his

father's lawn, but was deliberately done by him, purely out of a spirit of mischief, for the purpose of frightening the animal, the fact that he used the tool supplied to him for the doing of his father's work for the accomplishment of his own mischievous purpose did not make it an act within the scope of his employment, and did not render the defendant liable for the injury resulting therefrom.'' *Evers* v. *Krouse*, 70 N. J. Law, 653, 58 A., 181, 182, 66 L. R. A., 592.

The four cases chiefly relied upon by plaintiff, viz., *Deihl & Lord* v. *Ottenville*, 82 Tenn. (14 Lea), 191; *Luttrell* v. *Hazen*, 35 Tenn. (3 Sneed), 20, 25; *Nashville & C. R. Co.* v. *Starnes*, 56 Tenn. (9 Heisk.), 52, 54, 24 Am. Rep., 296, and *Borden Mills* v. *McGaha*, 161 Tenn., 376, 379, 32 S. W. (2d), 1039, fail to sustain his contention. These cases do hold that a master may be liable though the act of the servant was not necessary for the proper performance of his master's orders, or even contrary thereto, so long as the servant was acting in substantial execution of the master's orders. They also sustain plaintiff's contention that it is not necessary that the principal should expressly direct or have knowledge of the act done, if the agent was acting in the business of his superior.

And the opinion in *Nashville & C. R. Co.* v. *Starnes* held the company liable when the engineer, through sport, blew the whistle of the engine and made the team run away. The engineer was using the whistle provided for him in the cab. But this was distinguished from the general rule, and the court held that the established doctrine of the common law had been modified as applied to railroad companies out of absolute necessity for more stringent rules for protection of life and property. Cer-

tainly there can be no such reason in the present case to hold the ordinary owner of an automobile for the separate tort of a son while using the car for the mother. The act complained of had no connection with his authorized and directed use of the car, but was the distinct tort of the son and not in the scope of authority or course of employment.

The judgment of the trial court must be affirmed.