GOFF *v.* ST. BERNARD COAL CO. (two cases).

(Nashville, December Term, 1938.)

Opinion filed June 10, 1939.

WALKER & HOOKER, of Nashville, for plaintiff in error.

TRABUE, HUME & ARMISTEAD, of Nashville, for defendants in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

David Goff, a nine-year-old negro boy, by his father, Ollie Goff, as next friend, sued the St. Bernard Coal Company for personal injuries received when it is alleged he was struck by a truck belonging to the Coal Company.

The father sued for loss of services and medical and hospital bills.

The cases were heard together. At the conclusion of all the evidence, the Coal Company made a motion in each case for a directed verdict in its favor, which was sustained and the suits dismissed. The Court of Appeals held the evidence sufficient to take the cases to the jury, reversed the judgments, and remanded the cases for a new trial.

The Coal Company has filed its petition for writ of *certiorari,* which has heretofore been granted and argument heard.

The question as to the negligence of the driver of the truck is not free from difficulty, but we find it unnecessary to pass upon that matter.

The accident occurred about eleven-fifteen in the morning on Twenty-fifth Avenue, North, a short distance north of where said avenue terminates at Clifton Pike. David Goff and several other children were en route to their homes from Ashcroft School and were traveling south on Twenty-fifth Avenue. All of the children except David were on the sidewalk on the west side of said

avenue. Several of the children testified that David had been walking on the edge of the street adjacent to the sidewalk. . One of the children testified that David was also walking on the sidewalk until just before he was struck when he jumped out into the street. David admits that he saw the truck approaching from the north some distance before it struck him. In fact, he was not struck by the front of the truck but by the hind wheel, the rear axle having dual wheels, making the back end of the truck a little wider than the front end. Just how David happened to collide with this hind wheel is not satisfactorily explained. His leg was broken, but he has entirely recovered. There is a controversy as to whether this boy was injured by a truck belonging to defendant. There is evidence, however, which, if accepted, would establish the fact that David was struck by a truck belonging to defendant that was being driven by Tom Christman. Assuming this to be true, the question presented is, Was the servant acting for his master or within the scope of his employment at the time of the accident? The burden of establishing this fact rests upon the plaintiff. The uncontroverted proof establishes the fact that if Christman was driving the truck he had deviated from the line of his duties and, presumably, was on some mission of his own.

The defendant Coal Company maintains several coal-yards in Nashville, the nearest one to the place of this accident being on or near the corner of Charlotte Avenue and Twenty-fourth Avenue, from which yard the truck driven by Christman was operated. To get to this yard from the point of the accident the route would be south on Twenty-fifth Avenue to Clifton Pike; west on Clifton Pike to Twenty-sixth Avenue; south on Twenty-

sixth Avenue to Charlotte Avenue (distance not shown); and east on Charlotte Avenue to Twenty-fourth Avenue.

The uncontroverted proof shows that the Coal Company delivered no coal on that day to any customer north of Charlotte Avenue. That at ten-ten Christman left with a 50-ton load of coal to be delivered to A. R. Lester at 301 Kenner Avenue, which is two or two and one-half miles southwest of this coalyard, and returned to the yard at eleven-ten. From this uncontroverted evidence it can be seen that no slight deviation could have taken Christman a considerable distance north of this coalyard, and the conclusion is unescapable that if, in fact, Christman traveled some distance south on Twenty-fifth Avenue that morning he had departed from his master's business on some business or pleasure of his own. In this situation, under the great weight of authority, the master is not liable.

The general rule is thus stated in 39 C. J., 1303: "To exonerate the master from liability, it is essential that the deviation or departure should be for purposes entirely personal to the servant. Nevertheless, where a servant steps aside from the master's business and goes on a journey or does some act wholly independent of and foreign to, his employment for a purpose exclusively his own, the master is not liable for his acts during such time."

To the same effect is the statement of the annotator in 45 A. L. R., 482, as follows:

"It is not every deviation from the direct line of his duties on the part of an employee that constitutes a turning aside from and an abandonment of his master's business; nor does the master's liability cease merely because the servant is acting contrary to, or even in defiance of,

express instructions from his master, but the servant must have abandoned and turned aside completely from the master's business, to engage in some purpose wholly his own, before the master ceases to be liable for his act; so that a slight deviation by the servant in charge of a motor vehicle for his own purposes, when he is on business for his master, does not affect the liability of the master for an injury resulting from the negligent operation of his automobile by the servant.''

In this annotation and the subsequent ones in 68 A. L. R., 1051, and 80 A. L. R., 725, the cases supporting the text have been collected. This rule is in harmony with the decisions of this court. In volume 11, Michie's Digest of Tennessee Reports, 1938 Ed., 410, it is said:

''A master is not liable for the acts of his servant, beyond the scope of his employment or not in the furtherance of his master's business,'' citing numerous decisions of this court.

In *Core* v. *Resha*, 140 Tenn., 408, 412, 204 S. W., 1149, 1150, it is said:

''In *Goodman* v. *Wilson*, *supra* [129 Tenn., 464, 166 S. W., 752, 51 L. R. A. (N. S.), 1116], the basis of the common-law liability of an employer for negligence of his chauffeur was clearly defined. That liability, it was held, is to be tested by the rules governing master and servant. It was there said:

'' 'It is undoubtedly true, as a general proposition of law, that the doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the injury resulting from the wrong at the time and in respect of the very transaction out of which the injury arose, and the mere fact that the driver

of the automobile was the defendant's servant will not make the defendant liable. It must be further shown that at the time of the accident the driver was on the master's business, and acting within the scope of his employment.'

"This is in line with the overwhelming weight of authority in this country, which is to the effect that, if a chauffeur uses a car wholly in a service not the owner's, either with or without the owner's permission, the latter is not liable to one injured by reason of a negligent operation of the car, for the reason that he is not, in such use, acting within the scope of employment in the owner's business."

The principle is aptly illustrated in *Stone Co.* v. *Pugh*, 115 Tenn., 688, 91 S. W., 199, 4 L. R. A. (N. S.), 804, 112 Am. St. Rep., 881, in which it was held that the owner of a wagon in charge of a skillful driver is not liable for the death of a child fatally injured in attempting to alight from the wagon after having climbed thereon at the invitation of the driver who was neither expressly nor by implication authorized to invite children to get upon the wagon, and whose act in so doing was in no sense within the scope of his employment or in the furtherance of his employer's business.

Since Christman drove some distance north of Charlotte Avenue, which was a substantial deviation from his route, and there being no evidence that he did so in furtherance of his employer's business, we conclude that the Coal Company is not liable in these cases.

It follows that the judgments of the Court of Appeals will be reversed and those of the trial court affirmed.