**UNITED STATES of America, Appellant,**

v.

**Freeman TAYLOR, Appellee.**

**UNITED STATES of America, Appellant,**

v.

**Homer L. DEMOSS, Appellee.**

**Nos. 12674, 12675.**

United States Court of Appeals Sixth Circuit.

Sept. 14, 1956.

Richard M. Marcus, Washington, D. C. (Warren E. Burger, Asst. Atty Gen., Paul A. Sweeney, Atty., Dept. of Justice, Washington, D. C., Millsaps Fitzhugh, Memphis, Tenn., on the brief), for appellant.

W. H. Lassiter, Huntingdon, Tenn. (R. M. Murray, Gordon, Browning, Huntingdon, Tenn., on the brief), for appellants.

Before MARTIN, MILLER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

On February 26, 1954, a C–119 Air Force plane took off from Lawson Air Force Base at Columbus, Georgia, on what was to be a six hour training flight. Aboard were an Air Force lieutenant in command as pilot, and a crew consisting of a co-pilot and two flight engineers. The pilot and crew had been thoroughly instructed as to the specific training exercises which were to be performed: short field landings and take-offs at Lawson, instrument approaches eighty-two miles away at Maxwell Air Force Base, near Montgomery, Alabama, and visual approaches at Columbus, Georgia. The entire flight was to be confined to the "local flying area," an area precisely delimited by Air Force regulations, with an average radius from Lawson Air Force Base of about ninety miles.

After only one practice landing at Lawson, however, the plane left the "local flying area" and flew more than three hundred miles to Huntingdon, Tennessee, the pilot's home town. Upon arriving over Huntingdon the plane made two passes over the courthouse at a very low altitude and at an accelerated speed. These maneuvers violated established regulations of the Air Force with which the pilot was thoroughly familiar. Any such maneuvers were moreover extraordinarily dangerous in this "flying boxcar," a fact which the pilot also had reason to know. On the second pass the

plane disintegrated and crashed, and all aboard were killed. Burning gasoline from the plane injured the appellees who were working in a nearby field.

To recover for their injuries they brought the present suits against the United States, relying upon the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) and 28 U.S.C.A. §§ 2671 et seq. The district judge, sitting without a jury, entered judgments in their favor, finding as a fact that the pilot and crew of the airplane "were acting in the line of duty and within the general scope of their office and employment as officers and enlisted men of the United States Air Force." From those judgments the government has appealed.

At the outset the appellant contends that the conduct of the Air Force personnel which caused the appellees' injuries amounted to an assault and battery, and that the district court was therefore without jurisdiction to award judgment, the United States having expressly withheld its consent to be sued for that type of tortious conduct on the part of its employees.[1] Stepp v. United States, 4 Cir., 1953, 207 F.2d 909; Moos v. United States, 8 Cir., 1955, 225 F.2d 705.

 This issue was not raised in the district court. A jurisdictional question must be considered whenever it appears, however, and it seems obvious that the exceptions to Federal Tort Claims Act liability contained in 28 U.S.C.A. § 2680 are jurisdictional. See Stepp v. United States and Moos v. United States cited above. Cf. Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; but see Stewart v. United States, 7 Cir., 1952, 199 F.2d 517. Because this issue is raised so belatedly, however, we are without benefit of findings of fact by the district court directly responsive to the question of whether the operation of the plane over Huntingdon

constituted an assault. Were there any substantial dispute in the evidence as to what happened when the plane reached Huntingdon, it might therefore be necessary to remand the case to the district court for specific findings upon this issue. Marlborough Corporation v. United States, 9 Cir., 1949, 172 F.2d 787; Kelley v. Everglades Drainage District, 1943, 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485.

 There is, however, no such dispute. The evidence is substantially uniform that both passes made by the plane were at nearly level flight, at a very low altitude above the courthouse. No witness stated that he took shelter or saw anyone else do so. No witness stated that he was in fear for his personal safety. Several in fact stated that they went outside or to a window to get a better view. It conceivably could constitute an assault for the pilot of an airplane to dive steeply toward persons on the ground causing them to feel they were in immediate danger of being hit, but the record here warrants no such finding, nor any other finding that would establish even a tenuous case of assault and battery. See Restatement, Torts, Section 13. A remand for specific findings on this issue would therefore be pointless. Cf. Frieze v. West American Ins. Co., 8 Cir., 1951, 190 F.2d 381. We conclude that the district court had jurisdiction to entertain these actions under the Federal Tort Claims Act.

The appellees contend that, irrespective of the principles of *respondeat superior*, the government as the owner of the aircraft involved is absolutely liable for their injuries, upon the basis of a Tennessee statute so providing, as well as under the Tennessee common law imposing liability upon the owners of dangerous instrumentalities. The district court did not reach this contention, in view of its finding that the members of the crew

---

1. 28 U.S.C.A. § 2680 provides: "The provisions of this chapter and section 1346 (b) of this title shall not apply to—

\* \* \* \* \*

"(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

of the airplane were in fact acting within the scope of their employment.

The statute upon which the appellees rely is § 42–105 Tennessee Code Annotated, which provides in part as follows: "The owner of every aircraft which is operated over the lands or waters of this state is absolutely liable for injuries to persons or property on the land or water beneath, caused by the ascent, descent, or flight of the aircraft, or the dropping or falling of any object therefrom, whether such owner was negligent or not * * *." In addition, appellees call our attention to Tennessee decisions which they say state the rule in Tennessee that the owner of a dangerous instrumentality is liable for the conduct of his agent or servant even when not acting within the scope of his employment. Nashville & Chattanooga Railroad Co. v. Starnes, 1870, 56 Tenn. 52; see Hunt-Berlin Coal Co. v. Paton, 1918, 139 Tenn. 611, 619, 202 S.W. 935, 937; Life & Cas. Ins. Co. of Tennessee v. Russell, 1932, 164 Tenn. 586, 589, 51 S.W.2d 491, 492.

▬ Assuming that a private individual in the government's position would be absolutely liable to the appellees under this statutory and case law of Tennessee, it does not follow that the United States is therefore liable under the provisions of the Federal Tort Claims Act. The explicit terms of 28 U.S.C.A. § 1346(b) limit the waiver of sovereign immunity to cases where the damages which have been sustained were *"caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment,"* under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." This statutory language makes clear that

the United States has consented to be sued only where a private person would be liable under the *respondeat superior* doctrine. Reference must be had to the law of the state for the applicable law as to liability under that doctrine, but state law imposing liability regardless of whether the agent or servant was acting within the scope of his employment, or absolute liability under any circumstances, is inapplicable and irrelevant. The statute itself leaves little room for question on this issue, and any doubt that may have remained has been dispelled by decisions of the courts. Dalehite v. United States, 1953, 346 U.S. 15, 44–45, 73 S. Ct. 956, 97 L.Ed. 1427; United States v. Campbell, 5 Cir., 1949, 172 F.2d 500; Hubsch v. United States, 5 Cir., 1949, 174 F.2d 7; United States v. Eleazer, 4 Cir., 1949, 177 F.2d 914; Heale v. United States, 3 Cir., 1953, 207 F.2d 414; Rayonier Incorporated v. United States, 9 Cir., 1955, 225 F.2d 642.

We turn then to the controlling issue. Were the Air Force personnel who caused the appellees' injuries acting within the scope of their employment at the time of their negligent conduct?[2]

██ In the case of a member of the military or naval forces of the United States, it is provided by statute that " 'Acting within the scope of his office or employment' " means "acting in line of duty." 28 U.S.C.A. § 2671. It has been conclusively settled, however, as the district court correctly held, that although "line of duty" may have a different meaning in connection with benefit claims by members of the Armed Forces or their dependents, the standard of governmental liability under the Federal Tort Claims Act is with respect to both military and civilian employees that imposed by the *respondeat superior* doctrine of the state.[3] Williams v. United States,

---

2. The appellant does not question the district court's finding that the appellees' injuries were proximately caused by the negligence of the pilot or other member of the crew operating the airplane.

3. After an investigation the military authorities concluded that the pilot was not

acting "in the line of duty" at the time of his death and consequently denied death benefits to his mother. The district court was correct in concluding that these proceedings were "in no way binding upon this Court in its determination of the questions of scope of employment in

1955, 350 U.S. 857, 76 S.Ct. 100, reversing, 9 Cir., 1954, 215 F.2d 800; United States v. Campbell, 5 Cir., 1949, 172 F.2d 500; United States v. Eleazer, 4 Cir., 1949, 177 F.2d 914.

The district court found that the members of the plane crew were acting within the general scope of their employment in that they were operating the plane "in furtherance of the training mission of the United States Air Force and under conditions resembling those which normally attended its use in connection with flying operations of the United States Air Force." With that we are unable to agree.

The fact that the Air Force personnel were acting in disobedience of their orders would not alone exculpate the government from liability under the law of Tennessee. The Tennessee courts have consistently held that failure to obey a rule as to how the master's business is to be performed does not of itself constitute a departure from the servant's scope of employment. State v. Louisville & N. R. Co., 1892, 91 Tenn. 445, 19 S. W. 229; Eichengreen v. Louisville & N. R. Co., 1896, 96 Tenn. 229, 34 S.W. 219, 31 L.R.A. 702; Boswell v. Barnum & Bailey, 1916, 135 Tenn. 35, 185 S.W. 692, L.R.A.1916E, 912.

Moreover the Tennessee Court of Appeals has recognized that an employee may remain within the scope of his employment so as to hold his employer liable for his tort even though he undertakes a personal project of his own, if it is undertaken in the general course of carrying out his employer's business. Baskin & Cole v. Whitson, 1928, 8 Tenn. App. 578. But in that case the servant was on the prescribed route doing what he was supposed to do.

In the present case, on the other hand, the conclusion is inescapable that when the pilot left the "local flying area" and set out for his home town three hundred miles away, he and his crew completely abandoned the business of his employer, which was the performance of a specific program of training maneuvers within the local flying area. Three hundred miles, even in a flying boxcar, can hardly be classified as simply a slight detour from the area of the employer's business.[4] Such a geographical deviation alone would under Tennessee law clearly remove these employees from the scope of their employment. Goff v. St. Bernard Coal Co., 1939, 174 Tenn. 558, 129 S.W. 2d 205; Standard Tire & Battery Co. v. Sherrill, 1936, 170 Tenn. 418, 95 S.W.2d 915; Burris v. Farrell Bros., 1931, 14 Tenn.App. 121; see Lumbermen's Mut. Cas. Co. v. Dedmon, 1951, 196 Tenn. 94, 264 S.W.2d 567; Toombs v. Liberty Mut. Ins. Co., 1938, 173 Tenn. 38, 114 S.W.2d 785. Indeed the plane's departure from the area made physically impossible the accomplishment of the intended training maneuvers which alone constituted the employer's business.

Moreover, it seems equally clear that even if the pilot's conduct had occurred within the authorized geographical area, it would not have been within the scope of his employment under Tennessee law. "Extraordinary, extreme, or prankish acts rarely can be attributed to the master as means or methods of carrying out an ordinary employment." Terrett v. Wray, 1937, 171 Tenn. 448, 451, 105 S.W.2d 93, 94. The action of the pilot in hedgehopping over his home town was obviously motivated personally, and not by considerations of service for the Air Force. See Kelly v. Louisiana Oil Refining Co., 1934, 167 Tenn. 101, 66 S.W. 2d 997; Deihl & Lord v. Ottenville, 1885, 82 Tenn. 191; Shuck v. Carney, 1937, 22 Tenn.App. 125, 118 S.W.2d 896.

The course of conduct embarked upon by the pilot in charge of this airplane was the very antithesis of that encompassed by his course of employment.

these civil actions under the Federal Tort Claims Act."

4. The subjective intent of the pilot and crew in flying to Huntingdon was not of course subject to proof by direct evidence, since all were killed. But there is no claim that the flight was anything but a deliberate departure.

He completely abandoned the disciplined program of training maneuvers within the operational capabilities of the aircraft. Instead, he embarked upon a wholly undisciplined use of the airplane for a purpose it was not designed to perform. That conduct could not further the training purposes of the employer, but could only frustrate them.

These cases are reversed and remanded with directions to enter judgments in favor of the appellant.

MARTIN, Circuit Judge (dissenting).

I would affirm the judgments in these consolidated cases. In my opinion, United States District Judge Boyd correctly found upon the facts in evidence that, in operating the Army airplane for training purposes, the Lieutenant in command and the other members of the aircraft crew at the time of the crash were acting in their line of duty and within the general scope of their employment as officers and enlisted men of the United States Air Force.

Under Tennessee law, as well as the law generally, the mere fact that an employee is acting in disobedience of orders or instructions given him by his employer does not preclude a finding that he was acting within the scope of his employment. The officers and crew of the airplane were duly authorized to take off and use the airplane on a training flight. Their orders directed them to fly for six hours in a prescribed flying area and to perform various training operations.

The plane delivered to the men carried an eight-hour supply of gasoline. It was equipped with radio for communication with the Air Base. The prescribed local flying area was within a radius of some 85 miles from the Air Base. The plane remained in the local flying area for a time and made, as ordered, one simulated landing and take off. However, it departed from the local flying area by approximately 190 miles and made two low passes over the town of Huntingdon, Tennessee. This deviation was in disobedience of orders and in violation of regulations.

On the second pass over the courthouse at Huntingdon, the aircraft began to disintegrate; the gasoline streaming from it was ignited; and the plane crashed and burned in a field some one-half or three-fourths of a mile from the courthouse. All its crew members were killed.

Appellees, who were working in a garden nearby, were severely injured by burning gasoline which fell from the plane. Their injuries were admittedly directly and proximately due to the negligence of the occupants of the Army plane.

The controlling clause of the Federal Tort Claims Act, 28 U.S.C.A., § 1346(b), provides for recovery of damages caused to anyone "by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The Tennessee law is, therefore, the governing law of the case.

Fundamentally, the majority opinion applies the doctrine of deviation in master and servant cases relating to the operation of automobiles. In my judgment, the analogy is not a true one and its use is an unjustifiable extension of the case-law system beyond its proper confines. An airplane is operated in defiance of the laws of gravity and is a far more dangerous instrumentality than is an automobile. To afford earth-dwellers no compensatory protection from falling airplanes, negligently operated, merely because the doctrine of deviation is accepted in Tennessee as a defense in automobile damage suits, sets a dangerous precedent which in my view is not required, either in logic or under Tennessee law.

In the instant case, the negligent operators of the airplane were put in possession of the plane and were flying it in the line of their duty as trainees. The Government, being under the statute in the position of "a private person," should

be held to the same accountability as would be a commercial airline. I consider that there is no binding Tennessee precedent compelling the decision which the majority has reached; and that this court is free to apply its own independent reasoning to reach the substantial justice of the case, which I think supports the judgments awarded the injured persons.