**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0452n.06**
**Filed: June 29, 2006**

**No. 04-6391**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NANCY ROBERTS, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE:** **SILER, CLAY, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** Roberts is a Certified Registered Nurse Anesthetist who worked in the operating room of a Department of Veterans Affairs ("VA") hospital in Tennessee. She sued five of her federal co-workers in state court, alleging various state tort claims against them. The Government removed the action to federal court. Over Roberts's challenge, the district court substituted the Government as the party defendant because it found that the individual defendants[1] were acting within the scope of their employment and were therefore immune from suit under the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 (the "Westfall Act"). On the Government's motion, the district court then dismissed the suit for lack of subject-matter jurisdiction because Roberts did not exhaust her administrative remedies.

---

[1] For convenience, we refer to the five co-workers originally sued in state court as the "individual defendants."

On appeal, Roberts argues that the individual defendants acted with personal malice and not with an intent "to serve the master." Thus, she maintains, they acted outside the scope of their employment and the Government should not have been substituted as the party defendant. We disagree, and affirm judgment in favor of the Government for the reasons provided below.

**I.**

In 2001, Roberts initiated an EEO action for discrimination and retaliation against the VA based, in part, on several comments purportedly made by Lori Hagen, a nurse supervisor in the hospital's operating room. After being informed of the EEO charge and Roberts's allegations, Hagen immediately informed her staff that the charge was the "last straw" and that she was resigning her position in the operating room as a result. There is evidence in the record, however, that Hagen had decided several days earlier to accept a transfer to another position.

Shortly after Hagen made her statement, the other individual defendants drafted and circulated three different petitions. The petitions stated that the signatories supported Hagen, accused Roberts of creating a stressful, hostile work environment in the operating room, and suggested that patient care would eventually degrade as a result of Roberts's behavior. Memoranda alleging problems caused by Roberts were also submitted to a fact-finding board.

Hagen did not sign or circulate any of the petitions, or submit memoranda to the fact-finding board. In Roberts's view, however, it was Hagen's statement – her "big lie" – that instigated her co-workers' actions.

Roberts was removed from the operating room's anesthesia unit. She subsequently worked in the emergency room as a triage nurse and the gastroenterology department assisting with colonoscopies. She has not returned to work in the anesthesia unit.

## II.

In November 2002, Roberts sued the individual defendants, alleging state tort claims of outrageous or egregious conduct, intentional infliction of emotional distress, tortious interference with her employment relationship, tortious inducement to breach her employment contract, libel, professional disparagement, and interference with her professional career. Upon removing the lawsuit to federal court, the Government certified that the employees were acting within the scope of their employment when they purportedly committed the tortious acts. Based on the Government's certification, the district court substituted it as party defendant. The Government then moved to dismiss the suit for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Roberts failed to exhaust her administrative remedies prior to filing suit.

Roberts challenged the certification, arguing that the individual defendants were acting solely out of personal malice. The court permitted Roberts to engage in limited discovery on the scope-of-employment issue. Upon close of discovery, the district court concluded that the individual defendants were acting within the scope of their employment, as defined by Tennessee law. Because there was no dispute that Roberts had not exhausted her administrative remedies, the district court dismissed the case without prejudice.

**III.**

**A.      The Westfall Act**

The primary issue on appeal is whether the individual defendants were acting within the scope of their employment under Tennessee law.  The Westfall Act immunizes federal employees from liability for torts they commit when acting within the scope of their federal employment. 28 U.S.C. § 2679(b)(1).   When a federal employee acts within the scope of her employment and commits a tort, any relief for that tort must be sought against the Government under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (the "FTCA").  The obverse, of course, is that the Westfall Act does not immunize federal employees for torts they commit outside the scope of their federal employment; liability for such torts can lie with the individual tortfeasors under state law.  Whether a federal employee acts within the scope of her employment is determined by applying the law of the state in which the alleged tort took place, here Tennessee. *Singleton v. United States*, 277 F.3d 864, 870 (6th Cir. 2002).

In response to the filing of a lawsuit in state court alleging tort claims against a federal employee, the Government can certify that the employee acted within the scope of his employment and remove the action to federal court. 28 U.S.C. § 2679(d)(2).  The Government can then move to substitute itself as defendant in place of the targeted federal employee. *Id.*  While the Government's certification is conclusive for the purpose of removal, *id.*, it is subject to challenge for the purpose of substitution, *Singleton*, 277 F.3d at 870.  Thus, a plaintiff can challenge the Government's scope-of-employment certification in an effort to have the federal employee reinstated as a party defendant. If successful, the court must reinstate the federal employee as defendant and assess the claims under

state tort law. *Id*. at 870 n.5. If unsuccessful, the Government remains the defendant and the case

proceeds under the FTCA. *Id.*; 28 U.S.C. § 2679(d)(1).

A plaintiff challenging the Government's certification has the burden of proof:

> We have held that "The Attorney General's certification provides *prima facie* evidence that the employee was acting within the scope of employment." *RMI* [*Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996).] Thus, to contest the propriety of substitution, the plaintiff must produce evidence that demonstrates that the employee was not acting in the scope of employment. If the plaintiff produces such evidence, the government must then produce evidentiary support for its certification.

*Singleton*, 277 F.3d at 870-71.

## B.       Standard of Review

In general, we review *de novo* a district court's grant of a motion to dismiss for lack of

subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Coyne v. Am. Tobacco Co.*, 183 F.3d 488,

492 (6th Cir. 1999). "Whether an employee was acting within the scope of his employment is a

question of law, not fact . . . ." *Singleton*, 277 F.3d at 870 (quoting *RMI*, 78 F.3d at 1143). The

district court, however, must resolve any factual questions "necessary to its decision before entering

its order." *Id*. (quoting *Arthur v. United States*, 45 F.3d 292, 296 (9th Cir. 1995)). We review the

court's factual findings for clear error, *Dixon v. Ashcroft*, 392 F.3d 212, 216-17 (6th Cir. 2004), and

its application of the law to those factual findings *de novo*, *Singleton*, 277 F.3d at 870.

## C.       Scope of Employment Under Tennessee Law

Under Tennessee law, an employee acts within the scope of his employment if the employee's conduct meets the test set forth in the Restatement (Second) of Agency § 228 (1957):

(1) Conduct of a servant is within the scope of employment if, but only if:

   (a) it is of the kind he is employed to perform;

   (b) it occurs substantially within the authorized time and space limits;

   (c) it is actuated, at least in part, by a purpose to serve the master; and

   (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

*Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 938 (Tenn. Ct. App. 1992).

Roberts argues on appeal that the district court erred by not examining closely the motives of the individual defendants in determining whether their actions were "actuated, at least in part, by a purpose to serve the master." She maintains that they maligned and disparaged her, and that their personal motivations took their actions outside the scope of their employment under Tennessee law. Had she been permitted additional discovery, she believes that her evidence of personal bias and motivation would have been even stronger.

The district court properly focused on the individual defendants' actions and the circumstances of those actions. While evidence of intent can be relevant to whether an employee's

actions were "actuated . . . by a purpose to serve the master,"[2] Tennessee law generally measures the scope of employment not by "the motive of the servant, but whether that which he did was something his employment contemplated, and something which if he should do it lawfully he might do in his employer's name." *Hall Grocery Co. v. Wall*, 13 Tenn. App. 203, 208 (1930) (quoting *Deihl & Lord v. Ottenville*, 82 Tenn. 191 (1884)). It is clear that under federal case law, an employee may engage in conduct that is not condoned by the employer – even in violation of the employer's policies – and still be within the scope of his or her employment. *See Arbour v. Jenkins*, 903 F.2d 416, 422 (6th Cir. 1990). Under Tennessee law, an employee can act within the scope of his employment even when committing wanton or willful torts against another:

> The rule recognized in all the recent cases . . . is that for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of the master, who must answer for them.

*Anderson v. Covert*, 245 S.W.2d 770, 771-72 (Tenn. 1952) (quoting *Mott v. Consumers' Ice Co.*, 73 N.Y. 543, 547 (1878)). *See also Johnson v. Chapman*, 327 F. Supp. 2d 895, 899 (E.D. Tenn. 2004) ("Plaintiff's allegations that [the individual defendant] acted with vindictiveness and malice are not enough to overcome substitution where, even if true, [the employee's] actions appear to have been taken within her authority as a federal employee during the course of her employment."). This is consistent with the standards of several other states in our circuit. *See, e.g.*, *RMI*, 78 F.3d at 1143-

---

[2]Moreover, § 235 of the Restatement (Second) of Agency provides that "An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incidental to a service on account of which he is employed."

44 (finding that, under Ohio law, the "bad or personal motive" of the alleged wrongdoer is of little import on whether the employee was acting within the scope of employment); *Woods v. McGuire*, 954 F.2d 388, 390 (6th Cir. 1992) ("Under Ohio law, employees, even though acting intentionally and maliciously, are within the scope of employment if acting in the course of employment and within their authority."); *Arbour*, 903 F.2d at 422 (explaining that, under Michigan law, "an employee's actions may be within the scope of his or her employment even if the actions constitute intentional torts").

Roberts tries to distinguish this line of cases by arguing that while *supervisors* might act within the scope of their employment even when they malign, harass, or otherwise mistreat the employees they supervise, *nonsupervisory* co-workers act outside their scope when they engage in similar behavior. She cites no case law to support this distinction. As the Government points out, there is nothing in the Westfall Act that limits immunity to supervisors. In fact, we have previously found a federal employee immune from a co-worker's state tort action for, among other things, intentional infliction of emotion distress. *Woods*, 954 F.2d at 389-91 (affirming immunity under Ohio law of non-supervisor medical officer who purportedly made false allegations against the plaintiff).

Thus, in determining whether the individual defendants were acting within their scope of employment, we look to whether their actions were "actuated, at least in part, by a purpose to serve the master." Without question, Roberts's presence in the surgical unit generated turmoil and hostility, regardless of who was at fault. While patient care might not have suffered yet, such a result would be expected at some point in the future if the situation had not been resolved in some

manner.  Roberts acknowledges that the turmoil and hostile environment were not in furtherance

of the VA's interests.  It is apparent that the individual defendants were acting within the scope of

their employment when they sought to have her removed from the unit.

As for Hagen's initial statement, she made it immediately after talking with a counselor

about Roberts's intention to file an EEO charge.  She made it at work, to her co-workers.  The

substance of her comment involved her work – i.e., her transfer to another position within the VA.

Thus, the comment was reasonably incidental to her employment. *See Tenn. Farmers*, 840 S.W.2d

at 938 ("To be within the scope of employment, conduct must be . . . incidental to the conduct

authorized." (quoting Restatement (Second) of Agency § 229)).

Accordingly, even if Roberts's allegations of personal bias and malice are true, they are not

sufficient to counter the evidence provided by the individual defendants that their actions were

"actuated, *at least in part*, by a purpose to serve" the VA hospital.  As the individual defendants

were acting within the scope of their employment, the Westfall Act requires that the Government

be substituted as defendant, and Roberts's only recourse for her tort claims is under the FTCA.[3]

There is no question that Roberts did not exhaust her administrative remedies as required by

the FTCA, 28 U.S.C. § 2675(a).  Therefore, the district court properly dismissed her lawsuit without

---

[3]Roberts claims that the district court erred when it permitted only limited discovery.  Upon review
of the record, we find no error.  The court allowed Roberts to engage in discovery on the pertinent
issue, including taking the depositions of four of the five individual defendants.  The court's
discovery order was well within its discretion. *See Woods*, 954 F.2d at 391 (finding no abuse of
discretion where the plaintiff had an opportunity to depose two of the six defendants and had
sufficient time to engage in other discovery); *see also Schrob v. Catterson*, 967 F.2d 929, 936 (3d
Cir. 1992) (explaining that any discovery permitted should be "circumscribed as narrowly as
possible" when a scope-of-employment certificate is challenged).

prejudice for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Singleton*, 277 F.3d

at 872-73.[4]

**IV.**

For the reasons stated above, we AFFIRM the district court's judgment of dismissal.

---

[4]Although not specifically raised by the Government, we note the following:  The FTCA generally waives the Government's sovereign immunity for state tort actions. 28 U.S.C. § 2674.  It has not, however, waived its sovereign immunity to several classes of torts, including libel, slander, misrepresentation, deceit, and interference with contract rights. *Id*. § 2680(h).  This exemption in the FTCA, when read next to the Westfall Act's substitution provision, creates an apparent inequity: if the individual tortfeasor acted within the scope of employment when committing one of the exempted torts, then the Government must still be substituted and the individual tortfeasor remains immune from liability. *Maron v. United States*, 126 F.3d 317, 321-22 (4th Cir. 1997).  The apparent unfairness of this result was noted by the Supreme Court a number of years ago: ". . . Congress recognized that the required substitution of the United States as the defendant in tort suits against Government employees would sometimes foreclose a tort plaintiff's recovery altogether." *United States v. Smith*, 499 U.S. 160, 166 (1991).

Roberts states on appeal that "[i]t appears that *all* of [her] state law intentional tort claims derive from, or akin to" the exempted torts. Appellant's Brief at 53 (emphasis added); *see also id.* at 52.  Thus, given this admission, it follows that even if she were somehow to exhaust her administrative remedies, she would likely be unable to recover damages from the Government. Because the Government did not, however, move to dismiss her lawsuit for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the issue of whether her lawsuit should have been dismissed with prejudice is not before us.